Wollmuth Maher & Deutsch LLP
500 Fifth Avenue
New York, New York 10110
(212) 382-3300
Ronald J. Aranoff
James N. Lawlor
Alexandra C. Spina
Katherine E. M. McQuillen

*Counsel for Defendant Sindicato Nacional Trabajadores
Al Servicio de las Líneas Aéreas, Transportes, Servicios,
Similares, y Conexos*

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| In re:<br><br>GRUPO AEROMÉXICO, S.A.B. de C.V., *et al.*,<br><br>          Reorganized Debtors.[1] | **Chapter 11**<br><br>**Case No. 20-11563 (JPM)**<br><br>(Jointly Administered) |
| INVICTUS GLOBAL MANAGEMENT LLC,<br><br>          Plaintiff,<br><br>    - against -<br><br>MONOMOY CAPITAL PARTNERS LLC, and SINDICATO NACIONAL TRABAJADORES AL SERVICIO DE LAS LÍNEAS AÉREAS, TRANSPORTES, SERVICIOS, SIMILARES, Y CONEXOS,<br><br>          Defendants. | **Adv. Pro. No. 22-01122 (JPM)** |

## INDEPENDENCIA'S MEMORANDUM OF LAW IN SUPPORT OF
## MOTION TO DISMISS PLAINTIFF'S COMPLAINT

---

[1] The Reorganized Debtors are Grupo Aeroméxico, S.A.B. de C.V., Aerovías de México, S.A. de C.V., Aerolitoral, S.A. de C.V., and Aerovías Empresa de Cargo, S.A. de C.V.

<h1 style="text-align:center">TABLE OF CONTENTS</h1>

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND ....................................................................................................2

   A.  Aeroméxico Bankruptcy, CBA Order, and Bankruptcy Protection Covenant ...................2

   B.  Invictus' Lack of Diligence Prior to Buying the Claims ......................................................5

   C.  The Transfer Agreements ....................................................................................................6

   D.  The Motion to Enforce the CBA Order Against Invictus and Subsequent
      Settlement .............................................................................................................................8

   E.  The Confirmation Order and Exculpation in the Plan .........................................................9

   F.  Invictus' Causes of Action ..................................................................................................9

   G.  The Negotiations and Transactions Occurred in New York ..............................................11

ARGUMENT .........................................................................................................................11

   I.  Legal Standard ...................................................................................................................11

  II.  Governing Law ..................................................................................................................12

 III.  Defendants Have an Absolute Defense as They Were Exculpated ...................................14

 IV.  Invictus' Misrepresentation Claims Fail Because It Failed to Establish
      Privity................................................................................................................................16

  V.  Even if Exculpation Does Not Apply, the Claims Still Fail as a Matter of
      Law ...................................................................................................................................17

     A.  The Fraud-Related Claims Are Duplicative of Breach of Contract...........................17

     B.  The Elements of Fraudulent Inducement and Fraud Are Not Satisfied.....................19

        1.  Plaintiff Failed to and Cannot Allege a Material Misrepresentation...................19

        2.  Invictus Cannot Have Reasonably Relied on the Representations.......................21

        3.  Invictus Failed to Allege Damages ......................................................................24

     C.  Rescission Is Not an Available Remedy....................................................................25

D. Plaintiff Fails to Allege an Actual Breach of Contract ................................................26

E. Plaintiff Fails to Plead Required Elements of Negligent Misrepresentation ...............28

F. Plaintiff's Unjust Enrichment Claim Fails...................................................................29

**CONCLUSION** ........................................................................................................................30

# TABLE OF AUTHORITIES

**Cases**                                                                                              **Page #**

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    379 F. App'x 10 (2d Cir. 2010) ............................................................... 12

*Adelphia Recovery Tr. v. Bank of Am., N.A.*,
    390 B.R. 80, 88 (S.D.N.Y. 2008)........................................................... 12

*Amable v. New Sch.*,
    551 F. Supp. 3d 299 (S.D.N.Y. 2021) ................................................... 13

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009) .............................................................................. 11

*Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*,
    106 F.3d 22 (2d Cir. 1997) .................................................................... 22

*Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*,
    98 F.3d 13 (2d Cir. 1996) ........................................................ 16, 17, 18

*Brock Cap. Grp. LLC v. Siddiqui*,
    2022 U.S. Dist. LEXIS 101738 (S.D.N.Y. June 7, 2022) .................... 21

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .................................................................. 11

*Clark-Fitzpatrick v. Long Island*,
    70 N.Y.2d 382 (1987) ........................................................................... 16

*Cronos Group Ltd. v XComIP, LLC*,
    156 A.D.3d 54, (1st Dep't 2017) ..................................................... 21, 27

*DynCorp v. GTE Corp*,
    215 F. Supp. 2d 308 (S.D.N.Y. 2002) .................................................. 19

*Eurycleia Partners, LP v. Seward & Kissel, LLP*,
    12 N.Y.3d 553, (2009) .......................................................................... 24

*Fed. Hous. Fin. Agency v. UBS Ams., Inc.*,
    858 F. Supp. 2d 306 (S.D.N.Y. 2012) ............................................ 13, 14

*Fetet v. Altice USA, Inc.*,
  2021 U.S. Dist. LEXIS 129359 (S.D.N.Y. July 12, 2021) ............................................. 29, 30

*Greenberg v. Chrust*,
  198 F. Supp. 2d 578 (S.D.N.Y. 2002) ..................................................................... 18

*Harsco Corp. v. Segui*,
  91 F.3d 337 (2d Cir. 1996) ................................................................................ 22

*HSA Residential Mortg. Servs. v. Casuccio*,
  350 F. Supp. 2d 352 (E.D.N.Y. 2003) ...................................................... 12-13, 13

*In re Big Apple Volkswagen, LLC*,
  2016 Bankr. LEXIS 2057 (Bankr. S.D.N.Y. May 19, 2016) ............................... 20

*In re Extended Stay, Inc.*,
  2020 Bankr. LEXIS 2128 (Bankr. S.D.N.Y. Aug. 8, 2020) ............................... 11

*In re Granite Broad. Corp.*,
  369 B.R. 120 (Bankr. S.D.N.Y. 2007) ............................................................... 14-15

*In re LATAM Airlines Grp., S.A.*,
  2022 Bankr. LEXIS 1725 (Bankr. S.D.N.Y. June 18, 2022) ............................... 14

*In re Mal Dunn Assocs., Inc.*,
  406 B.R. 622 (Bankr. S.D.N.Y. 2009) ............................................................... 15, 16

*In re Mid-Island Hosp.*,
  276 F.3d 123 (2d Cir. 2002) ............................................................................ 18

*Ins. Co. of N. Am. v. Morris*,
  981 S.W.2d 667 (Tex. 1998) ............................................................................ 13

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
  698 F.3d 58 (2d Cir. 2012) ............................................................................ 13, 19

*Klaxon Co. v. Stentor Elec. Mfg. Co.*,
  313 U.S. 487 (1941) ...................................................................................... 12

*L-7 Designs, Inc. v. Old Navy, LLC*,
  647 F.3d 419 (2d Cir. 2011) ............................................................................ 11

*Mandarin Trading Ltd. v. Wildenstein*,
  16 N.Y.3d 173 (2011) .................................................................................... 29

iv

*Matsumura v. Benihana Nat'l Corp.*,
  542 F. Supp. 2d 245 (S.D.N.Y. 2008) ................................................................. 21

*Meagher v. Compania Mexicana De Aviacion, S.A.*,
  1992 U.S. Dist. LEXIS 4757 (S.D.N.Y. Apr. 10, 1992) ....................................... 17

*N.Y. Marine & Gen. Ins. Co. v. Tradeline,*
  (L.L.C.), 266 F.3d 112 (2d Cir. 2001) ................................................................. 10

*Nat'l Un. Fire Ins. Co. v. Cohen*,
  1997 U.S. Dist. LEXIS 16017 (S.D.N.Y. Oct. 15, 1997) ..................................... 25

*P.K. Dev., Inc. v. Elvem Dev. Corp.*,
  226 A.D.2d 200 (1st Dep't 1996) ........................................................................ 26

*Petedge, Inc. v. Garg*,
  234 F. Supp. 3d 477 (S.D.N.Y. 2017) ............................................................ 19, 28

*Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*,
  2008 U.S. Dist. LEXIS 68289 (S.D.N.Y. Sept. 9, 2008) ..................................... 19

*Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*,
  245 A.D.2d 96 (1st Dep't 1997) ..................................................................... 22, 23

*Summit Solomon & Feldesman v. Lacher*,
  623 N.Y.S.2d 210 (1st Dep't 1995) ..................................................................... 19

*Terra Sec. ASA Konkursbo v. Citigroup, Inc.*,
  450 F. Appx 32 (2d Cir. 2011) ................................................................. 21-22, 23

*Terwilliger v. Terwilliger*,
  206 F.3d 240 (2d Cir. 2000) ................................................................................ 27

*Travelers Indem. Co. v. Bailey*,
  557 U.S. 137 (2009) ............................................................................................ 16

*Ultramares Corporation v. Touche*,
  255 N.Y. 170 (1931) ........................................................................................... 16

*United States v. Williams*,
  2014 U.S. Dist. LEXIS 97367 (S.D.N.Y. July 17, 2014) ..................................... 25

*Veroblue Farms USA Inc. v. Canaccord Genuity LLC*,
  2021 U.S. Dist. LEXIS 166294 (S.D.N.Y. Sept. 1, 2021) ................................... 13

*Wilamowsky v. Take-Two Interactive Software, Inc.*,
    818 F. Supp 2d 744 (S.D.N.Y. 2011) ........................................................ 12

*Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*,
    736 Fed. Appx. 274 (2d Cir. 2018) ........................................................ 28

## Rules

Fed. R. Bankr. Proc. 9019(a) ........................................................ 3, 4, 20

Fed. R. Bankr. Proc. 7012(b) ........................................................ 11

Fed. R. Civ. Proc. 9(b) ........................................................ 19, 28

Fed. R. Civ. Proc. 12(b)(6) ........................................................ 11

## PRELIMINARY STATEMENT

Invictus Global Management LLC ("**Invictus**" or "**Plaintiff**"), a sophisticated private equity firm, admits in its complaint ("**Complaint**") that it failed to conduct basic due diligence as to the legal effect of the operative bankruptcy Order expressly incorporated into multi-million-dollar purchase agreements with Sindicato Nacional Trabajadores al Servicio de las Líneas Aéreas, Transportes, Servicios, Similares, y Conexos ("**Independencia**"). Invictus did not consult with counsel or advisors and either failed to read available public documents and filings or chose to ignore them. Having performed no diligence, Invictus now asserts that its primary purpose for purchasing claims – to "shape" a plan of reorganization – was frustrated. Despite its lack of diligence, Invictus seeks to hold Independencia and Monomoy Capital Partners LLC ("**Monomoy**" and with Independencia, "**Defendants**") liable for fraud, breach of contract, mutual mistake, negligent misrepresentation, and unjust enrichment. Taking all the allegations in the light most favorable to Plaintiff, however, Invictus has, at best, alleged that it was injured when it failed to comprehend the plain language of an order and substituted third-party opinion for basic diligence. Such conduct is simply not actionable. As set forth herein, the Complaint should be dismissed.

First, the confirmed plan of reorganization contained an express exculpation provision in favor of Defendants establishing an absolute defense to the Complaint. Invictus was on notice of, and consented to, this provision when the plan was confirmed, and it bars this action in its entirety.

Second, Invictus' misrepresentation claims must be dismissed because the Complaint fails to establish privity between Invictus and Independencia.

Third, fraud-related claims may not be brought where they are duplicative of breach of contract claims. The fraud claims asserted by Invictus are based on the same alleged actions, and arise from the same core of operative facts, that supposedly support its specious breach of contract

claims. Consequently, such claims are barred by New York law. Even if Invictus could bring such claims, which it cannot, it can never demonstrate a material misrepresentation, show it justifiably relied on such alleged misrepresentation, or that it was damaged as a result of such misrepresentation. Thus, the Complaint fails to satisfy required elements for fraud.

Fourth, even if claims other than fraud were not exculpated, they are equally meritless. Rescission based on mutual mistake is not an available remedy under the facts and circumstances of this case, in part, because the mistake alleged would be one of law, not fact, and Plaintiff cannot rely on its own negligence to assert mistake. Invictus cannot demonstrate breach of a contract given that the contracts made only express representations actionable, and the only representation was that the claims being sold were subject to the terms of the CBA Order. Even if there was an alleged breach, Invictus cannot demonstrate that it was harmed from same and, therefore, it fails to satisfy a required element to sustain its breach claim.

Fifth, Plaintiff also cannot establish a negligent misrepresentation given the arms-length, commercial nature of the transaction and a lack of reasonable reliance.

Finally, unjust enrichment is unavailable to Plaintiff where a valid and enforceable contract exists governing the same subject matter. For the reasons stated herein, the Court should dismiss Invictus' Complaint in its entirety.

## FACTUAL BACKGROUND

**A.** **Aeroméxico Bankruptcy, CBA Order, and Bankruptcy Protection Covenant.**

On June 30, 2020 ("**Petition Date**"), Grupo Aeroméxico, S.A.B. de C.V., along with three of its affiliates Aerovías de México, S.A. de C.V. ("**Aerovías**"), Aerolitoral, S.A. de C.V. ("**Aerolitoral**"), and Aerovías Empresa de Cargo, S.A. de C.V. ("**Cargo**") (collectively, "**Aeroméxico**"), filed chapter 11 bankruptcy petitions in this Court, which were jointly

administered under the caption *In re Grupo Aeroméxico S.A.B. de C.V., et al.*, Case No. 20-11563 (JPM) ("**Aeroméxico Bankruptcy**"). Compl. ¶ 25. By January 2021, Aeroméxico reached agreements with four Mexican unions on the terms for their respective new collective bargaining agreements ("**CBAs**"), including Independencia (collectively, "**Unions**"). Compl. ¶¶ 27-30. After reaching these agreements, Aeroméxico filed a *Motion of the Debtor for Entry of an Order Pursuant to 11 U.S.C. §§363(b) and 105(a) and Fed. R. Bankr. P. 9019(a) Authorizing Entry Into Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* on April 6, 2021 ("**CBA Motion**") [ECF No. 1058].[2] Compl. ¶ 32.

The CBA Motion stated that Aeroméxico and Independencia reached an agreement in principle on the terms of a new CBA on December 29, 2020, further modified on February 12, 2021. CBA Motion ¶ 16. The motion further provided that as a result of an April 6, 2021 amended and restated Bankruptcy Protection Covenant with one union, Asociación Sindical de Pilotos Aviadores de México ("**ASPA**"), the terms of Independencia's CBA were being further modified pursuant to the "most-favored-nation" understanding, and that Aeroméxico and Independencia were "in the process of entering into corresponding documentation setting forth the revised claim amounts." *Id.* ¶ 25. Additionally, Plaintiff admits that in exchange for allowed general unsecured claims, each Union, including Independencia, was required to comply with the Bankruptcy Protection Covenant applicable to ASPA, and that the "requirements [] are in the process of being documented in complementary agreements." *Id.* ¶ 40; Compl. ¶ 50. Plaintiff also admits that the Bankruptcy Protection Covenant was annexed to the publicly-filed CBA Motion, Compl. ¶ 46, but ignores that the covenant's Section 5 included a representation that ASPA would have to vote "in favor" of an Aeroméxico-sponsored Complying Plan. CBA Motion ¶ 21, Annex 1 at § 5.

---

[2] Citations to "ECF No." refer to the Aeroméxico Bankruptcy docket, Case No. 20-11563 (JPM), unless otherwise specified herein.

The Complaint acknowledges that on April 22, 2021, the Bankruptcy Court entered an unsealed and unredacted *Order Pursuant to 11 U.S.C. §§363(b), 105(a) and Fed. R. Bankr. P. 9019(a) Authorizing Entry Into Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* ("**CBA Order**") [ECF No. 1101] that authorized Aeroméxico to enter agreements establishing new labor conditions with each of the Unions. Compl. ¶ 55. Paragraph 8 of the CBA Order provided, in relevant part:

> Independencia shall be entitled to allowed general, non-priority unsecured claims . . . in these chapter 11 proceedings that are not subject to reconsideration under section 502 of the Bankruptcy Code or otherwise; provided that Independencia shall adhere to the requirements and conditions of the Bankruptcy Protection Covenant applicable to ASPA, *mutatis mutandis* (**including, without limitation, to vote in favor of a Complying Plan**).

CBA Order ¶ 8 (emphasis added). Thus, the CBA Order bound Independencia to support a "Complying Plan", including by voting in favor thereof ("**Plan Support Obligation**"). *Id.*, Annex 1. In so doing, the CBA Order granted the same relief Aeroméxico sought in Paragraph 40 of the CBA Motion (which the Complaint can only be read to admit) when it bound Aeroméxico and the "Unions" to the terms of ASPA's annexed Bankruptcy Protection Covenant. Compl. ¶ 50. While Paragraph 51 of the Complaint attempts to manufacture an inconsistency between the CBA Order and Motion to suggest that there was no disclosure that Independencia would be bound in the same way as ASPA, the superficial assertion fails as the CBA Motion expressly states that all Unions must adopt the Plan Support Obligation and the CBA Order expressly ordered the same.

Invictus also asserts that the CBA Motion did not request that successor holders of claims be bound by the CBA Order. *Id*. ¶ 52. The Complaint, however, concedes that the CBA Motion's accompanying proposed order sought such relief, and the entered CBA Order contains it:

> The obligations under this Order and the Bankruptcy Protection Covenant (including, without limitation, the obligation to vote

4

claims in favor of a Complying Plan) shall be binding on . . . the Unions, each successor or assignee, or the transferee of the claims allowed pursuant to this Order.

*Id.*; CBA Order ¶ 12 ("**Successorship Provision**").

In exchange for compliance with the CBA Order, Independencia received allowed general unsecured claims against each of Aerovías, Aerolitoral, and Cargo totaling $47,730,000 ("**Independencia Claims**"). CBA Order ¶ 8.

**B.     Invictus' Lack of Diligence Prior to Buying the Claims.**

Months after entry of the CBA Order, Invictus apparently learned that the Independencia Claims were for sale. Compl. ¶¶ 86-87. In July 2021, Cowen Special Investments LLC ("**Cowen**"), an alleged intermediary for Invictus, negotiated with Independencia and its alleged agent, Monomoy, for the purchase of the Independencia Claims (or a portion thereof). *Id.* ¶ 88. Through its alleged diligence process, Invictus identified the CBA Order and informed Defendants, allegedly through Cowen, that the Plan Support Obligation and Successorship Provision were potential restrictions antithetical to its interest in purchasing the claims. *Id.* ¶ 93. Invictus allegedly communicated through Cowen to Monomoy that it would only purchase the Independencia Claims on the conditions that it retain the right "to vote freely on any proposed Aeroméxico plan and fully engage and advocate for its position in the [Aeroméxico Bankruptcy]" and "negotiate with the debtor and other stakeholders to help shape the terms of a plan of reorganization." *Id.* ¶¶ 91-92.

Invictus allegedly conveyed that these conditions were "key component[s]" (*Id.* ¶ 92) "of paramount importance" (*Id.* ¶ 97). The Complaint reveals, however, that regardless of whether the components were "key" or "paramount," Invictus sought neither first-hand information nor independent analysis upon which a sophisticated businessperson would rely. The extent of Invictus' due diligence consisted of a second-hand request via Cowen of Independencia's claims

broker for an explanation of the Plan Support Obligation and Successorship Provision. *Id.* ¶¶ 95-96, 103. Read in the best light for Plaintiff, the Complaint reveals that the broker made *no* factual representations; rather it gave nothing more than an opinion:

> [W]e do not *believe* this [Plan Support O]bligation is relevant or material because (1) **we take the position** that the obligation is specific to ASPA and does not travel with the claim to a buyer **(a position that the company may dispute)**, (2) the "successorship" provision in the annex to the Order Allowing the Claim is **likely** unenforceable, (3) the language **only applies to the final vote on a judicially-approved plan**, the very last step in the process. In practice, this language (which appears in almost all of my "labor claim" deals going back 15 years) has never prevented any buyer from **working to shape the plan** even if that means hard negotiations will [sic] the company.

*Id.* ¶ 102 ("**July 7 Email**") (emphasis added). Nowhere in the 52-page Complaint does Plaintiff allege it sought to confirm the opinion through consultation with counsel, discussions with Aeroméxico, or an investigation of the CBA Order's potential impact before purchase.

## C.     The Transfer Agreements.

Invictus' purchase of the Independencia Claims was allegedly documented through six separate transactions. *Id.* ¶¶ 60-66. Independencia (as seller) and Cowen (as buyer) entered into three agreements (one each for the Aerovías, Aerolitoral, and Cargo claims) on August 9, 2021 ("**Initial Transfer Agreements**"). *Id.* ¶ 63. In three transactions in which Defendants and Aeroméxico played no role, on August 18, 2021, Cowen (as seller) and Invictus (as buyer) entered into three agreements substantially similar to the Initial Transfer Agreements ("**Subsequent Transfer Agreements**" and together with the Initial Transfer Agreements, the "**Transfer Agreements**").[3] *Id.* ¶ 64. As evidenced by the "Trade Date" in the Transfer Agreements, however, the Independencia Claims were actually sold to Cowen weeks earlier on July 16, 2021. Exs. A, B.

---

[3] Initial and Subsequent Transfer Agreement exemplars are attached to the Declaration of James N. Lawlor as Exhibits A and B, respectively.

The Initial Transfer Agreements allegedly resulted from extensive negotiations with Defendants through Cowen. *Id.* ¶¶ 86-114.[4] Invictus purportedly "insisted" on multiple occasions that additional and specific representations be included in the Initial Transfer Agreements to "clarify the meeting of the minds between Independencia (as Seller) and Plaintiff (as Buyer)." *Id.* ¶¶ 106, 108-13. Specifically, Invictus requested that Independencia represent that:

> **Other than the [CBA] Order (including the annex thereto)**, there are no contracts, documents, stipulations or orders, of any kind of nature whatsoever**, that would materially and adversely affect the Transferred Rights** . . . .

*Id.* ¶ 109 (emphasis added). It further "insisted" that Independencia make additional express representations that were incorporated. *Id.* ¶¶ 110, 112. Plaintiff, therefore, admits that it negotiated and received contractual language to address its "key" and "paramount" concerns.

Additionally, Invictus requested that the definition of the Independencia Claims (described as the Transferred Claims in the Initial Transfer Agreements) include the following language:

> Buyer does not assume and shall not be responsible for (and Seller shall retain) any obligations or liabilities related to or arising from or in connection with the Transferred Claim or the Transferred Rights, including, without limitation, any obligations or liabilities set forth in the [CBA] Order.

*Id.* ¶ 107. The foregoing was notably not made in the context of a representation, covenant, or warranty by Independencia, but merely as a definition of the asset being transferred.

Each time Invictus allegedly insisted on representations, Independencia complied. *Id.* ¶¶ 104-14. Invictus subsequently filed notices of the Transfers of Claims evidencing that it had acquired portions of each of the Independencia Claims. ECF Nos. 1632-40.

---

[4] Plaintiff alleges Defendants' negotiations resulted in the form of the Subsequent Transfer Agreements between it and Cowen, but Independencia is not a party to, and played no role in, those agreements as is clear from the Complaint.

**D.      The Motion to Enforce the CBA Order Against Invictus and Subsequent Settlement.**

After purchasing the Independencia Claims, Invictus admits it engaged in negotiations with Aeroméxico and other claimholders concerning an appropriate treatment of general unsecured creditors under Aeroméxico's forthcoming proposed plan. Compl. ¶ 118. On December 10, 2021, the Bankruptcy Court approved Aeroméxico's disclosure statement allowing it to solicit votes [ECF No. 2293] on its proposed Chapter 11 plan ("**Plan**"), and on December 15, 2021, Invictus submitted votes rejecting the Plan. *Id.* ¶¶ 119-23.

On December 24, 2021, Aeroméxico filed a *Motion to Enforce the Court's Order Authorizing Entry Into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* ("**Motion to Enforce**") [ECF No. 2356], which asked this Court to enforce against Invictus the terms of the CBA Order, including the Plan Support Obligation and Successorship Provision. Compl. ¶ 124. Invictus objected [ECF No. 2391], and Aeroméxico filed its reply on January 5, 2022 ("**Motion to Enforce Reply**") [ECF No. 2423]. *Id.* ¶¶ 128, 130. The Motion to Enforce Reply attached a March 31, 2021 agreement between Aeroméxico and Independencia ("**Independencia Agreement**") that included Independencia's intent to be bound by a plan support obligation and that Aeroméxico would seek Bankruptcy Court approval of the Independencia Agreement. *Id.* ¶¶ 130-32; Motion to Enforce Reply, Ex. A-2 at "THIRD".

The Bankruptcy Court initially granted the motion on January 21, 2022 ("**Enforcement Order**"), which enforced the CBA Order, Plan Support Obligation, and Successorship Provision against Invictus. Compl. ¶¶ 137-38. Invictus filed a notice of appeal [ECF No. 2547], but at the January 28, 2022 hearing on confirmation of the Plan, Aeroméxico's counsel entered on the record, and Invictus' counsel acknowledged, a settlement concerning the Enforcement Order ("**Settlement**"). Confirmation Hrg. Tr., Jan. 28, 2022, at 43:6-46:7 [ECF No. 2634]. The

Settlement vacated the Enforcement Order and permitted Invictus to vote the Independencia Claims in any way it deemed appropriate, and Invictus agreed to change the vote for its Independencia Claim against Cargo to accept the Plan. *Id.* Invictus was also paid $1.1 million in cash.[5] *Id.* at 44:1-8. The Complaint omits that Invictus both exercised its negotiated right to vote the non-Cargo Independencia Claims against the Plan and consented to confirmation of the Plan.

**E.      The Confirmation Order and Exculpations in the Plan.**

The Bankruptcy Court entered a February 4, 2022 Order confirming the Plan ("**Confirmation Order**") [ECF No. 2668]. Compl. ¶ 140. The Confirmation Order reflected the terms of the Settlement. Confirmation Order ¶¶ 13-16. Additionally, the Confirmation Order made findings in support of and approved Section 8.10 of the Plan, which provides, in relevant part:

> [N]o Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, related to, or arising out of, . . . the solicitation of votes for, and confirmation of, the Plan; . . . other than Claims or Causes of Action arising out of, or related to . . . gross negligence or willful misconduct (including, without limitation, actual fraud).

*Id.* ¶¶ XXI, 20; Plan § 8.10 ("**Exculpation Provision**").

**F.      Invictus' Causes of Action.**

Invictus filed the present action in New York state court alleging, *inter alia*, that Defendants misrepresented the applicability of CBA Order paragraphs 8 and 12, as well as the Independencia Agreement, such that Invictus was convinced it would be permitted to freely vote the Independencia Claims. According to the Complaint, the alleged misrepresentations give rise

---

[5] Notably, this amount is almost triple the face amount of the Independencia Claim against Cargo, the claim that, pursuant to the Settlement, Invictus had to vote in favor of the Plan.

to multiple breach of contract, fraud, mistake, and similar claims.[6] Paragraph 5 of the Complaint contains a laundry list of what Invictus ostensibly expected but did not receive:

> In communicating its diligence requests to Defendants, Plaintiff made clear that (a) its interest in the Independencia Claims stemmed from a long-running effort to enhance recoveries for Aeroméxico's unsecured creditors through active participation in the bankruptcy process, (b) its ability to vote any claim it purchases freely with respect to any subsequently proposed plan was sacrosanct and core to its claims purchase decision, (c) it was unwilling to purchase any claim stripped of its concomitant statutory rights to oppose any Aeroméxico plan, even one that distributed value to all unsecured creditors equally (but insufficiently) without favoritism, and (d) as a result, it was unwilling to purchase the Independencia Claims if Independencia had already given away such rights by agreeing to the Plan Support Obligation.

Compl. ¶ 5. Nonetheless, Plaintiff admits Cowen executed Initial Transfer Agreements that incorporated the terms of the CBA Order, the Bankruptcy Protection Covenant, and the Plan Support Obligation, which unequivocally restricted voting rights and bound Independencia and its successors. *Id*. ¶ 69. And despite Plaintiff's "extensive negotiations," the agreements omit specific representations addressing Paragraph 5's laundry list. Plaintiff can only point to a representation that **other than the CBA Order**, "there are no contracts, documents, stipulation or orders, of any kind or nature whatsoever, that would materially and adversely affect the Transferred Rights" – language that does not purport to modify the incorporated CBA Order and annexed obligations. *Id*. To reanimate its claims, Plaintiff switches its focus to definitional language in the Initial Transfer Agreements, but the provision is not a representation by Independencia. *Id*. ¶ 107.

---

[6] Claims for fraud, negligent misrepresentation, and unjust enrichment are alleged solely against Monomoy. As the Complaint pleads that Monomoy was Independencia's agent, Independencia addresses such claims as if they were alleged against it. *See N.Y. Marine & Gen. Ins. Co. v. Tradeline (L.L.C.)*, 266 F.3d 112, 122 (2d Cir. 2001).

**G. The Negotiations and Transactions Occurred in New York.**

In an apparent effort to make Texas law applicable, Invictus claims a principal place of business in Texas (Comp. ¶ 14) but admits it was Cowen (which has a New York office) that had direct contact with Monomoy and signed the agreements. Monomoy is registered and has its principal place of business in New York, where the purported tortious acts occurred. *Id.* ¶¶ 17-18.[7]

## ARGUMENT

**I. Legal Standard.**

Pursuant to Fed. R. Civ. Proc. 12(b)(6), made applicable by Fed. R. Bankr. Proc. 7012(b), to survive a motion to dismiss "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Plausibility . . . depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L-7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

On a motion to dismiss, courts are generally limited to the complaint, including written instruments attached as exhibits or statements or documents incorporated by reference. *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002). Courts may also consider documents "integral to the complaint" even if not formally incorporated by reference and "matters of which a court may take judicial notice." *In re Extended Stay, Inc.*, 2020 Bankr. LEXIS 2128, at *15-16 (Bankr. S.D.N.Y. Aug. 8, 2020) (citation omitted). In bankruptcy litigation, courts may take

---

[7] Plaintiff imputes Monomoy's alleged knowledge and actions to Independencia under an agency relationship. Compl. ¶¶ 80-85, 166, 183. There is no relationship, and Monomoy was named in error. *See* Ex. A at Sched. 2.

judicial notice of documents "filed in a related bankruptcy proceeding, an adversary proceeding and the underlying bankruptcy case." *Id.* at *16-17; *see also Adelphia Recovery Tr. v. Bank of Am., N.A.*, 390 B.R. 80, 88 (S.D.N.Y. 2008) ("[T]erms of a confirmed plan . . . are binding . . . and should be considered . . . [on] a motion to dismiss"), *aff'd*, 379 F. App'x 10 (2d Cir. 2010).

The Complaint, including its exhibits, documents incorporated by reference, and the documents integral to it in the underlying Aeroméxico Bankruptcy record – such as the Plan and Confirmation Order – fail to state a claim upon which relief can be granted. The Court should, therefore, dismiss it with prejudice. *Wilamowsky v. Take-Two Interactive Software, Inc.*, 818 F. Supp 2d 744, 761-62 (S.D.N.Y. 2011).

## II.     Governing Law.

Invictus does not dispute that its causes of action for mutual mistake and breach of contract are governed by New York law. Compl. ¶ 22. However, Invictus' contention that Texas law governs the remainder of its claims because of its principal place of business is frivolous. *Id.* Defendants never contracted, negotiated, or dealt directly with Invictus, as it admits they dealt with Cowen. *Id.* ¶ 61. Regardless of whether Invictus succeeded Cowen as a result of subsequent transactions having nothing to do with Defendants, Plaintiff has not alleged that Cowen's principal place of business is, or that the transaction occurred in, Texas. Thus, there are no facts that would support the conclusion that Texas tort law applies. Rather, New York law applies to all claims.

In addition, under a choice of law analysis, the claims are governed by New York law. Federal courts apply the choice of law rules of the state in which it sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). Under New York law, "the first question is whether a choice of law analysis is necessary due to an actual conflict of laws." *HSA Residential Mortg. Servs. v.*

*Casuccio*, 350 F. Supp. 2d 352, 362 (E.D.N.Y. 2003). There is no substantive difference between New York and Texas law as to fraud[8] or unjust enrichment[9]. Therefore, New York law applies.

To the extent New York and Texas law involve different phraseology or elements to prove fraudulent inducement[10] and negligent misrepresentation,[11] New York law still governs. When determining choice of tort law, New York uses an interest analysis that "give[s] controlling effect to the law of the jurisdiction which . . . has the greatest concern with the specific issue raised in the litigation." *Fed. Hous. Fin. Agency v. UBS Ams.*, Inc., 858 F. Supp. 2d 306, 335 (S.D.N.Y. 2012) (citation omitted). The interest analysis "distinguishes between conduct-regulating rules, which dictate appropriate standards of conduct, and loss-allocating rules, which prohibit, assign, or limit liability after the tort occurs." *Id.* (quotations and citation omitted). In New York, fraudulent inducement and negligent misrepresentation claims (as well as fraud) are conduct-regulating. *Veroblue Farms USA Inc. v. Canaccord Genuity LLC*, 2021 U.S. Dist. LEXIS 166294, at *31-33 (S.D.N.Y. Sept. 1, 2021).

The alleged conduct giving rise to the misrepresentation-based claims undisputedly occurred in New York. Monomoy is located in New York and apparently so is Cowen. Compl. ¶ 18. When Monomoy was allegedly communicating with and making misrepresentations to Cowen, they occurred in New York. *Id.* ¶ 17. In addition, the dispute arises out of a New York bankruptcy case and the effect of the operative language of this Court's Orders. At minimum, the Complaint

---

[8] *See HSA Residential Mortg. Servs. v. Casuccio,* 350 F. Supp. 2d 352, 363 (E.D.N.Y. 2003) (same elements).

[9] *See Amable v. New Sch.,* 551 F. Supp. 3d 299, 318 (S.D.N.Y. 2021) (precluding unjust enrichment claims where contract governs subject matter); *Patterson v. Five Point Cap. Midstream Funds I & II, L.P.*, 2020 Tex. App. LEXIS 9550, at *26 (Tex. App. Houston [1st Dist.] Dec. 8, 2020) (same).

[10] *Compare Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012), *with Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 674 (Tex. 1998).

[11] *HSA Residential,* 350 F. Supp. 2d at 364 (only New York law requires privity or a relationship approaching it).

contains no basis to assert anything of consequence occurred in Texas. New York law governs as it is the place where Defendants "engaged in the behavior that the conduct-regulating rule seeks to deter." *Fed. Hous. Fin. Agency,* 858 F. Supp. 2d at 335.

## III. Defendants Have an Absolute Defense as They Were Exculpated.

The claims for rescission based on mutual mistake, breach of contract, negligent misrepresentation, and unjust enrichment (first, fourth, sixth, and seventh causes of action, respectively) are all barred by the Exculpation Provision, which was explicitly approved by this Court's Confirmation Order. Thereunder, *any* claim, other than claims for fraud, gross negligence, or willful misconduct, are exculpated and released:

> [N]o Exculpated Party shall have or incur, and each Exculpated Party is hereby released and exculpated from: any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for **any Claim in connection with, related to, or arising out of**, . . . **the solicitation of votes for, and confirmation of, the Plan**; . . . and the transactions in furtherance of any of the foregoing…other than Claims or Causes of Action arising out of, or related to… gross negligence or willful misconduct (including . . . actual fraud).

Confirmation Order ¶ 20; Plan § 8.10 (emphasis added). Such provisions are routinely approved by bankruptcy courts for the purpose of protecting debtors, creditors, and related parties from unnecessary litigation that could adversely affect the bankruptcy estate. *See In re LATAM Airlines Grp., S.A.*, 2022 Bankr. LEXIS 1725, at *157-60 (Bankr. S.D.N.Y. June 18, 2022) (holding that "exculpation provisions are frequently included in chapter 11 plans because stakeholders all too often . . . wish to second guess the decisionmakers" and extending the exculpation provision to bar claims against non-estate fiduciaries "based on the negotiation, execution, and implementation of agreements and transactions that were approved by the Court") (citations omitted); *In re Granite*

*Broad. Corp.*, 369 B.R. 120, 139-40 (Bankr. S.D.N.Y. 2007) (exculpation required "any claims in connection with the bankruptcy case be raised in the case and not be saved for future litigation").

The Independencia Claims were negotiated and allowed via the CBA Order. The CBA Order states clearly that Independencia was bound to support a "Complying Plan." Thus, the Independencia Claims are inextricably linked to a Court-approved resolution within the scope of the Exculpation Provision. This provision was written expansively, covering not only direct claims generated by court-approved settlements and transactions found to be in the estates' "best interest" (*e.g.*, the CBA Order, the confirmed Plan), but also claims "in connection with, related to, or arising out of" such approvals. The provision also protects specific stakeholders (including Independencia) deemed integral to the solicitation and plan-related court-approved resolutions.

Invictus is bound by the broad language of the Exculpation Provision and the Confirmation Order, which is a final order. Although it initially objected to confirmation, Invictus never challenged or objected to the language of the Exculpation Provision. More importantly, Invictus voluntarily entered into the Settlement and withdrew its objection to confirmation, thereby allowing the Exculpation Provision to become effective. *See In re Mal Dunn Assocs., Inc.*, 406 B.R. 622, 628-29 (Bankr. S.D.N.Y. 2009) (enforcing plan provisions containing a broad exculpation to bar state court action when the claimant failed to timely appeal the confirmation order approving those provisions). The confirmed Exculpation Provision (which was included in the CBA Order and Bankruptcy Protection Covenant), was bargained for at arm's length between Aeroméxico and the Unions, each of which are sophisticated parties, as part of a consensual resolution to avoid potentially contentious litigation surrounding modifications to the CBAs. With Plaintiff bound by the broad exculpatory language, the Court should give the language its full effect and bar Invictus from asserting related claims against Defendants. *See In re Mal Dunn*

*Assocs.*, 406 B.R. at 628-29; *see also Travelers Indem. Co. v. Bailey*, 557 U.S. 137, 150-51 (2009) (the plain terms of an unambiguous court order are entitled to their full effect).

Perhaps anticipating that it was frivolously asserting barred claims, Plaintiff concocts alternative claims purportedly based on fraud and fraudulent inducement. To the extent the Complaint asserts such claims, the Court is not bound by labels and is free to consider whether they are sufficiently distinct to avoid exculpation and release. *See In re Mal Dunn Assocs*, 406 B.R. at 633. As detailed in Section V.A., *infra*, Plaintiff's fraud-related claims cannot exist where a valid and enforceable contract governs the subject matter and the recovery sought arises out of the same facts and circumstances. *Clark-Fitzpatrick v. Long Island*, 70 N.Y.2d 382, 388-89 (1987); *see also Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc.*, 98 F.3d 13, 20 (2d Cir. 1996). Invictus admits that agreements expressly govern the subject matter in dispute yet pleads fraud in the alternative in reliance on the same allegations. These fraud-styled claims were, therefore, exculpated and released, and the Court should dismiss the Complaint in its entirety.

IV.    **Invictus' Misrepresentation Claims Fail Because It Failed to Establish Privity.**

Invictus' tort claims fail as a matter of law as the Complaint does not allege facts necessary to establish Independencia was in privity, or near privity, with Invictus. As is evident from the Transfer Agreements and the Complaint, Independencia had no contractual relationship with Invictus. *See* Exs. A, B. Under the *Ultramares* Doctrine, a plaintiff lacking a contractual relationship with an alleged tortfeasor must demonstrate that a sufficient nexus between the adverse parties exists such that the lack thereof does not bar the claims. *Ultramares Corporation v. Touche,* 255 N.Y. 170, 182-83 (1931). Invictus has not and cannot satisfy such requirements.

For near privity to exist, Invictus must show (1) Independencia was aware its alleged statements would be used for a particular purpose, (2) that a known party (Invictus) intended to

rely on the statements in furtherance of that purpose, and (3) there was some conduct by Independencia linking it to Invictus evidencing Independencia's understanding of Invictus' reliance. *Meagher v. Compania Mexicana De Aviacion, S.A.*, 1992 U.S. Dist. LEXIS 4757, at * 14 (S.D.N.Y. Apr. 10, 1992). The only fair reading of the Complaint is that Cowen, not Invictus, entered into arms-length, commercial transactions with Independencia. At all times, Invictus was a stranger to the negotiation and execution of the Initial Transfer Agreements.

As a result, the Complaint fails, at a minimum, to properly plead the second and third elements of the doctrine. The Complaint contains no allegation that Invictus had **any** direct contact with Independencia or its agent before purchasing the claims and, therefore, cannot allege that it was a party **known** to Independencia. Rather, the Complaint alleges that Independencia, through its alleged agent, communicated **only with Cowen**. Compl. ¶¶ 88-90. The Complaint is also silent as to any conduct by Independencia or its agent that would link either of them to Plaintiff that evidences Independencia's understanding of Invictus' reliance. Consequently, dismissal of all tort claims is required under Fed. R. Civ. Proc. 9.

## V. Even if Exculpation Does Not Apply, the Claims Still Fail as a Matter of Law.

### A. The Fraud-Related Claims Are Duplicative of Breach of Contract.

New York black letter law renders the fraudulent inducement and fraud claims impermissible as they are "premised upon an alleged breach of contractual duties and the supporting allegations do not concern representations which are collateral or extraneous to the terms of the parties' agreement." *Bridgestone/Firestone, Inc*., 98 F.3d at 20 (citation omitted). The Complaint alleges that Independencia failed to disclose the existence of the Independencia Agreement, and, through Monomoy, made representations concerning the applicability of the Plan Support Obligation and Successorship Provision. *See, e.g.*, Compl. ¶¶ 6, 12, 102, 130. It also pleads

that Invictus refused to purchase the Independencia Claims without express representations in the sale agreements and, therefore, insisted on, negotiated for, and received express language to address its concerns. *Id.* ¶¶ 104-114. Yet, based on these facts, Plaintiff alleges both that Independencia fraudulently induced it into entering the contracts, despite extensive negotiations, and that Independencia breached the agreements because the "contractual promises and representations" turned out to be false. *See, e.g., id.* ¶¶ 161, 167, 178, 192. It is indisputable that the fraud-related claims revolve on the truth and accuracy of express contractual language. Thus, Invictus fails to identify misrepresentations collateral to the Initial Transfer Agreements; indeed, the Complaint admits they are **entirely and expressly grounded** in the contracts themselves.

Invictus also cannot demonstrate that that it falls within an exception that would permit fraud-type claims as the Complaint fails to show "a legal duty separate from the duty to perform under the contract" or "seek special damages that are caused by the misrepresentation and not recoverable as contract damages." *Bridgestone/Firestone, Inc.*, 98 F.3d at 20. As the purchases are arms-length, commercial transactions, Plaintiff can never demonstrate a separate legal duty. *Greenberg v. Chrust*, 198 F. Supp. 2d 578, 585 (S.D.N.Y. 2002); s*ee also In re Mid-Island Hosp.*, 276 F.3d 123, 130 (2d Cir. 2002) (absent extraordinary circumstances, arms-length commercial transactions will not be converted to a "relation of confidence or trust sufficient to find the existence of a fiduciary relationship") (citations omitted). Additionally, the damages Invictus seeks for fraud are both (1) recoverable in contract and (2) exactly the same as the damages pled for breach. *See, e.g.*, Compl. ¶¶ 174, 185, 195, 203 ("ordered to pay…the difference between what Plaintiff paid to purchase such Claims . . . and what Plaintiff has received . . . under the Plan"). Invictus simply seeks a refund of the purchase price, which does not amount to special damages.

*See DynCorp v. GTE Corp*, 215 F. Supp. 2d 308, 326 (S.D.N.Y. 2002) (special damages "seek to compensate . . . for losses other than the diminished value of the promised performance").[12]

As Invictus' fraud claims are based on the same facts and damages as its breach of contract claim and it has both failed to adequately plead and cannot demonstrate any exception to the general rule, the fraud claims should be dismissed as duplicative.

## B.    The Elements of Fraudulent Inducement and Fraud Are Not Satisfied.

A cause of action for fraud or fraudulent inducement requires a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable or reasonable reliance by the plaintiff, and damages. *See Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) (fraud); *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (fraudulent inducement). Claims rooted in fraud must satisfy the heightened pleading requirement of Fed. R. Civ. Proc. 9(b), and a party cannot rely on mere "incantations" of the elements to satisfy such requirements. *Petedge, Inc. v. Garg*, 234 F. Supp. 3d 477, 497-98 (S.D.N.Y. 2017); *see also Summit Solomon & Feldesman v. Lacher*, 623 N.Y.S.2d 210, 210 (1st Dep't 1995) (allegations are not entitled to consideration if they "consist of bare legal conclusions as well as factual claims which are either inherently incredible or flatly contradicted by documentary evidence"). As the Complaint fails, at a minimum, to demonstrate a material misrepresentation, justifiable reliance, or damages the claims fail as a matter of law.

## 1.    Plaintiff Failed to and Cannot Allege a Material Misrepresentation.

The Complaint fails to plead with specificity facts demonstrating a material misrepresentation or omission made by Defendants. For example, Invictus asserts that

---

[12] The Complaint seeks the equitable remedy of rescission but demands contract damages. While the Complaint asserts that parties can be placed in the status quo ante, confirmation altered all creditors' rights permanently and rendered that outcome impossible, making rescission unavailable. *See Strategic Growth Int'l, Inc. v. RemoteMDx, Inc.*, 2008 U.S. Dist. LEXIS 68289, at *14 (S.D.N.Y. Sept. 9, 2008) (no rescission where the status quo ante cannot be restored).

Independencia's alleged failure to disclose the Independencia Agreement (and plan support obligation included therein) amounted to a material misrepresentation that no other document other than the CBA Order materially and adversely affected its rights. Compl. ¶¶ 159-60. The argument is nonsensical. The Independencia Agreement contained a provision substantially identical to, and consistent with, the Plan Support Obligation subsequently approved and entered by this Court. *Id.* ¶¶ 44, 132. The Independencia Agreement cannot, therefore, be read to impose additional or new restrictions, and its mere existence does not render it inconsistent with Defendants' representations as the CBA Order remained the operative document affecting Invictus' rights. In sum, the documentary evidence is flatly contradictory of Plaintiff's incredible claims.

There was also nothing deceitful in Aeroméxico seeking approval of the Independencia Agreement after it had already been finalized. Debtors usually negotiate and then seek approval of "proposed compromises and settlements of estate claims, outside the ordinary course of business" in order for them to become effective. *In re Big Apple Volkswagen, LLC*, 2016 Bankr. LEXIS 2057, at *20 (Bankr. S.D.N.Y. May 19, 2016); 11 U.S.C. § 363(b); Fed. R. Bankr. Proc. 9019(a). Even if non-disclosure of the Independencia Agreement was a misrepresentation or omission (it was not), it was not material as court approval was always needed.

Plaintiff also alleges a misrepresentation by Independencia in a statement in the Initial Transfer Agreements, Compl. ¶ 107:

> Buyer does not assume and shall not be responsible for (and Seller shall retain) any obligations or liabilities related to or arising from or in connection with the Transferred Claim or the Transferred Rights, including, without limitation, any obligations or liabilities set forth in the [CBA] Order.

Contrary to Plaintiff's contention, however, the language is not a representation by Independencia. It is a definition inserted in a section entitled "Purchase and Sale" (Ex. A, § 1(d)), but Plaintiff

neither directly included nor referenced the terms in "Seller's Representations and Warranties" (*Id.* § 4; Compl. ¶ 106). It is illogical to claim fraudulent inducement in reliance on language not required to be a representation, particularly where the same contract incorporated the CBA Order and required the parties to make express representations as to its effect. Moreover, to the extent the "Purchase and Sale" language is inconsistent with a specific provision of the CBA Order, the specific controls. *Cronos Group Ltd. v XComIP, LLC*, 156 A.D.3d 54, 61 (1st Dep't 2017).

As to Monomoy's alleged misrepresentation, on its face it constitutes nothing more than an opinion. Compl. ¶ 102. ("[W]e do not **believe** this Obligation is relevant... we **take the position that** the obligation is specific to ASPA and does not travel with the claim to a buyer (**a position that the company may dispute**) . . . the "successorship" provision . . . is **likely** unenforceable" (emphasis added)). As an opinion, Invictus' fraud claim is rendered untenable. *Matsumura v. Benihana Nat'l Corp.*, 542 F. Supp. 2d 245, 252-53 (S.D.N.Y. 2008) (dismissing fraud claims because "predictive or opinion statements about future events, without more, are not misrepresentations"). As neither Defendant made any misrepresentation, let alone one that was material, the Complaint fails to plead the first element of fraud and fraudulent inducement.

## 2. Invictus Cannot Have Reasonably Relied on the Representations.

Assuming *arguendo* it could be shown Defendants made misrepresentations, the fraud-related claims do not meet the justifiable reliance element. "[T]he reasonableness of reliance is properly considered at the motion to dismiss stage because the standard is an objective one." *Brock Cap. Grp. LLC v. Siddiqui*, 2022 U.S. Dist. LEXIS 101738, at * 8 (S.D.N.Y. June 7, 2022). To determine reasonableness, courts consider "the entire context of the transaction, including factors such as its complexity and magnitude, the sophistication of the parties, and the content of any agreements between them." *Terra Sec. ASA Konkursbo v. Citigroup, Inc.*, 450 F. Appx 32, 34 (2d

Cir. 2011) (citation omitted). If a party has "the means to discover the true nature of the transaction by the exercise of ordinary intelligence, and fails to make use of those means, he cannot claim justifiable reliance." *Stuart Silver Assocs., Inc. v. Baco Dev. Corp.*, 245 A.D.2d 96, 98-99 (1st Dep't 1997); *see also Banque Franco-Hellenique de Com. Int'l et Mar., S.A. v. Christophides*, 106 F.3d 22, 26 (2d Cir. 1997) ("patent foolishness is not excused").

Invictus expressly disclaimed reliance on the representations upon which it bases its claims. Where a party "specifically disclaims reliance upon a particular representation in a contract, that party cannot in a subsequent action for common law fraud, claim it was fraudulently induced to enter the contract by the very representation it has disclaimed reliance upon." *Harsco Corp. v. Segui*, 91 F.3d 337, 345 (2d Cir. 1996). The Initial Transfer Agreements provide, in pertinent part:

> Buyer represents and warrants to Seller (as of the date of this Agreement and as of the Closing Date) that: Buyer acknowledges that in consummating the transactions contemplated by this Agreement, it is not relying upon any express or implied representations or warranties **of any nature**, whether in writing, orally or otherwise, made by or on behalf of Seller or any of its affiliates **with respect to any fact or matter relating to the Debtor or the Transferred Rights, other than as specifically set forth in Section 4** of this Agreement.

Ex. A § 5(e) (emphasis added). Representations or omissions **other than those identified in Section 4** cannot be the basis of justifiable or reasonable reliance. Rather, Section 4 expressly incorporated the CBA Order, Bankruptcy Protection Covenant and Successor Provision, removing any doubt as to what representations could be relied upon. Compl. ¶ 109. Attempts to plead reliance on the existence of the Independencia Agreement, July 7 Email, or "Purchase and Sale" language are consequently barred. *See Harsco*, 91 F.3d at 346 (plaintiff "should be treated as if it meant what it said" when it disclaimed reliance on representations except those in the contract).

Even without a disclaimer, courts routinely decline to find justifiable reliance where the allegedly defrauded party failed to conduct proper diligence or consult with appropriate advisors. In *Stuart Silver Assocs., Inc.*, the court did not find justifiable reliance and dismissed the fraud claims because, *inter alia*, plaintiffs failed to conduct a diligence investigation or consult with counsel before making a major real estate investment. 245 A.D.2d at 99. In *Terra Sec. ASA Konkursbo*, the court found that plaintiffs failed to meet the reasonable reliance requirement because "no effort seems to have been made to verify any of the defendants' alleged misrepresentations[.]" 450 F. App'x at 34.

Similarly, Invictus cannot claim that it reasonably relied on Defendants' alleged misrepresentations. The Complaint does not allege that Invictus sought advice of counsel to confirm Defendants' statements in the July 7 Email or clarification as to the effect of the CBA Order. It also does not allege that Invictus conducted any actual diligence or investigation into those representations after it "discovered" the CBA Order. Rather, the Complaint makes clear that Invictus exclusively relied on Defendants' opinions allegedly solicited by Cowen. Compl. ¶ 103. Even assuming the truth of Invictus' questionable assertion that it "looked but could not find" an agreement with Independencia (*Id.* ¶ 94), the Complaint sets forth no facts demonstrating that it would have taken more than an "exercise of ordinary intelligence" (or a phone call to Aeroméxico's counsel) to find public information as to the agreement; in fact, the Complaint does not reveal any diligence by Invictus. The CBA Motion itself, for example, discloses an agreement between Aeroméxico and Independencia was complete, and published press releases indicate the same. *See, e.g.,* CBA Motion ¶¶ 16, 22, 40 and Exs. B-C [ECF No. 1058].

The Complaint further omits that the Initial Transfer Agreements contain express representations by Invictus that it had adequate information concerning the Aeroméxico

Bankruptcy before purchasing the Independencia Claims and that any such information was publicly available, effectively conceding that the CBA Order was adequate, public, and that it had sufficient information. *See, e.g.*, Ex. A § 6(b)(iii) & (v). Such circumstances render Invictus' purported reliance on alleged misrepresentations objectively unreasonable and "patently foolish."

As an SEC-registered private equity firm holding itself out as having a "deep understanding of the legal intricacies of corporate bankruptcies,"[13] Invictus cannot argue that it is not a sophisticated entity or without access to even the most basic tools to conduct diligence before purchasing multi-million-dollar claims. Invictus also cannot plausibly argue that the relevant information underlying the alleged misrepresentations was peculiarly within Defendants' knowledge when the Complaint admits, and the Initial Transfer Agreements expressly represented, that the information relevant to the Independencia Claims is in the public record. Compl. ¶ 93 (affirmatively alleging it "identified as potential restrictions . . . the language of the CBA Order", which it indisputably obtained from the public record as it was not a party to a CBA). As a result, Invictus has failed to plead justifiable reliance.

### 3. Invictus Failed to Allege Damages.

Finally, Invictus has not adequately pled damages. *Eurycleia Partners, LP*, 12 N.Y.3d at 559. Invictus alleges that it made clear that the ability to freely vote its claims was "sacrosanct and core" and that it was "unwilling to purchase" the claims if it could not oppose the plan. Compl. ¶ 5. However, the Complaint omits that it received such rights as part of the Settlement. Specifically, for the non-Cargo Independencia Claims, Invictus exercised its right to vote the claims against the Plan and consented to the confirmation of the Plan. Confirmation Order ¶¶ 13-16. Further, the Complaint omits that, for the Cargo Independencia Claim, Invictus received a cash payment nearly

---

[13] *Invictus Lends to Small Firms Left Out of Big Funds' Reach: Q&A* (July 1, 2021), https://invictus-gm.com/invictus-lends-to-small-firms-left-out-of-big-funds-reach-qa/.

triple what the claims were worth in exchange for a vote in favor of the Plan. *See* Confirmation Hrg. Tr., Jan. 28, 2022 at 44:1-8. As a result, Invictus has failed to plead this element. The Complaint fails to sustain fraud-type claims and should be dismissed.

### C. Rescission Is Not an Available Remedy.

Although the first cause of action is framed as a mutual mistake of fact, it is a claim based on a mistake of law. "A mistake of law arises when persons having full knowledge of the facts come to an erroneous conclusion as to their legal effect." *United States v. Williams*, 2014 U.S. Dist. LEXIS 97367, at *14 (S.D.N.Y. July 17, 2014) (citation omitted). When the applicable law could have been discovered upon diligent research, "it is not a mistake that destroys the obligations under the contract." *Id.*; *see also Nat'l Un. Fire Ins. Co. v. Cohen*, 1997 U.S. Dist. LEXIS 16017, at *7 (S.D.N.Y. Oct. 15, 1997) (where a document's "legal effect" could be discovered through diligent research, "New York courts will not grant rescission on the basis of mistake of law").

All parties were aware of the CBA Order's unambiguous language. As alleged by Plaintiff, despite that knowledge Cowen entered into the Initial Transfer Agreements under the purported belief that the CBA Order was neither binding on successors nor would affect the ability to freely vote the Independencia Claims. Compl. ¶¶ 102-114. Specifically, Plaintiff claims Defendants stated that it was their "position" that the Plan Support Obligation and Successorship Provision were not enforceable against a buyer, and Plaintiff apparently relied on that position when executing the Transfer Agreements. *Id.* ¶ 102. As alleged by Invictus, the misunderstanding was of an order's legal effect, not as to any specific fact or set of facts.

Despite the alleged mutual mistake, with minimal diligence Plaintiff easily could have ascertained the CBA Order's legal effect, such as consulting with counsel or seeking clarification from the Court. Doing so would have enlightened it to the reality underlying the "key" conditions

upon which Invictus purchased the Independencia Claims. Yet, Plaintiff does not plead that it conducted **any** diligence into the CBA Order **other than** identifying it. In fact, Plaintiff alleges that it "substantially" relied on Defendants' opinion. *Id.* ¶ 114. Because Plaintiff did nothing other than rely on speculation as to an order's effect, it is not entitled to rescission.

Even if the mistake was one of fact, Plaintiff's first cause of action still fails because mutual mistake cannot be invoked by a party to avoid the consequences of its own negligence. *P.K. Dev., Inc. v. Elvem Dev. Corp.*, 226 A.D.2d 200, 201-02 (1st Dep't 1996). "[W]here a party must go beyond its own efforts in order to ascertain relevant facts . . . courts have held that the party must bear the risk of mistake if it chooses to act on its otherwise limited knowledge." *Id.* at 202. In *P.K. Dev.*, the court declined to rescind a contract where defendant failed to conduct ordinary diligence into the subject property's occupancy and noted "the failure of events to develop or continue as expected . . . does not entitle [defendant] to rescission or avoidance of the contract." *Id.* Similarly, the best Plaintiff alleges here is that it negligently assumed the truth and accuracy of the July 7 Email by failing to seek, at a minimum, the advice of counsel. Consequently, it chose to act on its limited knowledge as to the CBA Order's effect and cannot sustain a claim for mutual mistake.

### D. Plaintiff Fails to Allege an Actual Breach of Contract.

Plaintiff contends that Independencia breached the Transfer Agreements as it "promised" to retain the obligations imposed by the CBA Order and because it allegedly failed to disclose the existence of the Independencia Agreement. Compl. ¶¶ 12, 107, 177. The claims are baseless.

According to Plaintiff, based on the "promise," Invictus requested that "language be added to the section defining the bundle of Transferred Rights." *Id.* ¶¶ 106-107. The language to which Plaintiff refers, however, can only be read as an attempt by the "Buyer" to summarize what it was buying. Critically, the language was not made a representation, covenant, or warranty, either

directly or by incorporation, despite Invictus requiring multiple representations elsewhere. In fact, the language cannot be relied upon under the agreements' express terms because it was **not** made an express representation. Regardless, no legal principle supports the conclusion that the language was sufficient to alter the effect of the incorporated CBA Order.

Perhaps Plaintiff intends to argue that the definition contradicts the CBA Order and somehow controls. It cannot. Independencia's express representation as to the "Transferred Rights" begins with the phrase "[o]ther than the [CBA] Order," vitiating such an argument. Ex. A, § 4(g). Moreover, assuming an inconsistency, a court must first consider whether the language can be harmonized. *See Terwilliger v. Terwilliger*, 206 F.3d 240, 245 (2d Cir. 2000) (citations omitted). Given Plaintiff was purchasing prepetition claims defined by the CBA Order and had Seller represent that other than that order there were no binding obligations, the only reasonable interpretation would be that the definitional language merely confirmed that Buyer could not be compelled to fulfill Independencia's **ongoing** obligations under the CBA Order to Aeroméxico, not that the CBA Order's final, unappealed terms related to the claims did not govern.

Finally, if there is an inconsistency that cannot be harmonized, a specific representation by Independencia is the only representation that would be actionable. "Where there is an inconsistency between a specific and a general provision of a contract, the specific provision controls." *Cronos Group*, 156 A.D.3d at 61. The only specific representation made is that the "Transferred Rights" are impacted by the CBA Order's provisions, not the definition allegedly inserted by Plaintiff. Thus, the definitional language does not support a claim for breach.

With respect to the contention that the alleged failure to disclose the Independencia Agreement breached Section 4(g), the contention cannot stand. The section states that other than the CBA Order, no document existed that materially and adversely affected the Independencia

Claims. Compl. ¶¶ 12, 109. The provision is not a representation that the Independencia Agreement did not exist. To breach Section 4(g), the Independencia Agreement would, at a minimum, have to materially and adversely alter the Independencia Claims in a manner that was **inconsistent with** the impact caused by the CBA Order, including the Bankruptcy Protection Covenant and Plan Support Obligation. There is no allegation that the Independencia Agreement is inconsistent with the foregoing. In fact, Plaintiff does not dispute that the language is consistent with the language of the CBA Order. *Id*. ¶ 132 (quoting the Independencia Agreement whereby Independencia agreed to support a complying plan, including by voting in favor thereof). Simply put, it was the CBA Order that "materially and adversely" affected the Independencia Claims. The Independencia Agreement's repeating of the language could not give rise to a breach, and Invictus' claim fails.

However, even if Independencia breached the contract, Invictus still cannot prove it was harmed by the breach, an essential element of this claim, thereby requiring dismissal. *Zam & Zam Super Mkt., LLC v. Ignite Payments, LLC*, 736 Fed. Appx. 274, 276 (2d Cir. 2018). While Invictus alleges it was damaged because the CBA Order restricted its ability to freely vote the Independencia Claims (Compl. ¶¶ 91-92), the Complaint omits the key fact that the Confirmation Order **expressly allowed** Invictus to do exactly that as a result of the Settlement with Aeroméxico. *See* Confirmation Order, ¶ 13(c). Consequently, Invictus was not harmed, and this claim fails.

### E. Plaintiff Fails to Plead Required Elements of Negligent Misrepresentation.

Where negligent misrepresentation claims are based on the same facts upon which a fraud claim is grounded, Rule 9(b) requires negligent misrepresentation to be pled with particularity. *Petedge, Inc. v. Garg*, 234 F. Supp. 3d at 496. A plaintiff must allege "(1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the

plaintiff; (2) that the information was incorrect; and (3) reasonable reliance on the information." *Mandarin Trading Ltd. v. Wildenstein*, 16 N.Y.3d 173, 180 (2011) (citation omitted).

Invictus fails to plead the first and third requirements to sustain its negligent misrepresentation claim. Nowhere does the Complaint allege facts pleading the existence of a special relationship between Plaintiff and Defendants. Instead, it clearly shows that Plaintiff and Defendants were parties to an arms-length, commercial transaction and no fiduciary duty existed. Compl. ¶¶ 86-114. The Complaint essentially admits that the sale of the Independencia Claims was an arms-length transaction as Plaintiff and Defendants **communicated through, and contracted with**, an intervening party, Cowen. Compl. ¶¶ 61, 62, 88, 90. Invictus admits that the "common practice" of "trading of large U.S. bankruptcy claims" involves back-to-back transfer agreements, further supporting their arms-length nature. *Id.* ¶ 61. As in *Mandarin Trading*, there is no privity-like relationship since the transaction "lacks even the bare, minimal contact" of the relevant parties. 16 N.Y.3d at 181. Even if there was a special relationship, dismissal is still required for failure to plead reasonable reliance, as discussed in detail in Section V.B.2., *supra*.

### F. Plaintiff's Unjust Enrichment Claim Fails.

To assert a claim for unjust enrichment, a plaintiff must show that "(1) defendant was enriched (2) at plaintiff's expense, and (3) that it is against equity and good conscience to permit defendant to retain what is sought to be recovered." *Fetet v. Altice USA, Inc.*, 2021 U.S. Dist. LEXIS 129359, at *26 (S.D.N.Y. July 12, 2021) (citation omitted). However, unjust enrichment claims "cannot be pursued where an enforceable contract addresses the same claim." *Id.* at *27. The essence of Plaintiff's unjust enrichment claim is that Monomoy should return to Plaintiff any payments or compensation it received from Independencia in connection with its role as claims broker. Compl. ¶¶ 216-217. Aside from the convoluted nature of the argument, it is meritless.

Plaintiff alleges that Monomoy was Independencia's agent in connection with the negotiation of the Initial Transfer Agreements and sale of the Independencia Claims. *Id*. ¶¶ 62, 80-82, 90. Accordingly, purported misrepresentations from Monomoy upon which Plaintiff supposedly relied were "imputed to Independencia." *Id*. ¶ 81. The claimed offending statements were ultimately inserted as representations from Independencia in the Initial Transfer Agreements. *Id*. ¶¶ 106-109. Consequently, the Complaint admits that the Initial Transfer Agreements govern the subject matter of the dispute, eviscerating the claim. Without question, the unjust enrichment claim is based on the same core of operative facts as the breach of contract and tort claims requiring it to be dismissed as duplicative. *Fetet*, 2021 U.S. Dist. LEXIS 129359, at *17-18.

## CONCLUSION

For all of the foregoing reasons, Invictus' Complaint against Defendants should be dismissed with prejudice in its entirety.

Dated: New York, New York
September 29, 2022

*/s/ James N. Lawlor*
Ronald J. Aranoff
James N. Lawlor
Alexandra C. Spina
Katherine E. M. McQuillen
WOLLMUTH MAHER & DEUTSCH LLP
500 Fifth Avenue
New York, New York 10110
Phone: (212) 382-3300
Fax: (212) 382-0050

*Counsel for Defendant Sindicato Nacional Trabajadores Al Servicio de las Líneas Aéreas, Transportes, Servicios, Similares, y Conexos*