UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

In re:                                           Chapter 11

Grupo Aeromexico, S.A.B. de C.V., et al.,        Case No.: 20-11563 (JPM)

              Reorganized Debtors.[1]        (Jointly Administered)

-----------------------------------------------------------x

Invictus Global Management LLC,

                Plaintiff,

    – v –                                    Adv. Pro. No. 22-01122 (JPM)

Monomoy Capital Partners LLC, Sindicato
Nacional Trabajadores al Servicio de las Lineas
Areas, Transportes, Servicios, Similares, y
Conexos, Athena Advisory Partners and
Monomoy Capital Management, L.P.,

                Defendants.

-----------------------------------------------------------x

## <u>MEMORANDUM OPINION AND ORDER</u>[2]

**JOHN P. MASTANDO III**
**UNITED STATES BANKRUPTCY JUDGE**

      Before the Court is (1) Plaintiff Invictus Global Management LLC's ("Plaintiff") Motion

for Remand (the "Remand Motion"), [Docket No. 41]; (2) the motions of Defendants Monomoy

Capital Partners LLC, Sindicato Nacional Trabajadores al Servicio de las Lineas Areas,

Transportes, Servicios, Similares, y Conexos ("Independencia"), Athena Advisory Partners

("Athena") and Monomoy Capital Management, L.P. (together with Monomoy Capital Partners

---

[1] The Reorganized Debtors in these cases, along with each Reorganized Debtor's registration number in the applicable jurisdiction, are as follows: Grupo Aeroméxico, S.A.B. de C.V. 286676; Aerovías de México, S.A. de C.V. 108984; Aerolitoral, S.A. de C.V. 217315; and Aerovías Empresa de Cargo, S.A. de C.V. 437094-1. The Reorganized Debtors' corporate headquarters is located at Paseo de la Reforma No. 243, piso 25 Colonia Cuauhtémoc, Mexico City, C.P. 06500.

[2] References to "Docket No. __" are to filings entered on the docket in this adversary proceeding, No. 22-01122. References to "Bankr. Docket No. __" are to filings entered on the docket in the jointly-administered bankruptcy case, No. 20-11563.

LLC, "Monomoy"), which seek dismissal of the adversary proceeding [Docket Nos. 26, 29, 33, 44, 48]; and (3) the motion of non-party Reorganized Debtors Grupo Aeromexico, S.A.B. de C.V. *et al.* (the "Debtors" or "Reorganized Debtors") seeking to enforce the Court's confirmation order (the "Motion to Enforce") [Docket No. 39]. As the Court denies the Motion to Enforce, and grants the Remand Motion, the Court does not reach the issues presented by the motions to dismiss other than dismissal based on provisions of the Plan.

## BACKGROUND

### A.  THE STATE LAW ACTION AND THE INSTANT MOTIONS

In Reorganized Debtors' bankruptcy case, *In re Grupo Aeromexico, S.A.B. de C.V., et al.*, Case No. 20-11563, this Court confirmed the Debtors' Joint Plan of Reorganization under Chapter 11 of the Bankruptcy Code on February 4, 2022, (the "Plan") [Bankr. Docket No. 2668], and closed that proceeding on December 28, 2022, pursuant to the *Final Decree Closing the Chapter 11 Cases* (the "Final Decree") [Bankr. Docket No. 2962]. Plaintiff commenced the instant action with the filing of a complaint dated June 17, 2022, in the Supreme Court of the State of New York. [Docket No. 1.] Independencia filed a notice of removal to federal court, and the District Court referred the case to this Court. Plaintiff filed its First Amended Complaint (the "Complaint") on October 20, 2022 [Docket No. 32].

Broadly, Plaintiff alleges that Defendants, in the course of selling certain general unsecured claims, made misrepresentations about the nature of the claims to be purchased as well as the impact of certain orders issued by the Court. Plaintiff asserts seven state law causes of action against Defendants: (1) recission of contract based on mutual mistake, (2) recission based on fraudulently induced unilateral mistake (3) fraudulent inducement, (4) breach of contract, (5) fraud, (6) negligent misrepresentation and (7) unjust enrichment (collectively, the "State Law Action").

Each of the Defendants filed a motion to dismiss in response to the Complaint on November 3, 2022. In Monomoy's motion to dismiss (the "Monomoy Motion to Dismiss"), Monomoy argues that: (1) Plaintiff has failed to establish that Monomoy is an alter ego of Athena; (2) Plaintiff lacks standing to bring the State Law Action against Monomoy; (3) the State Law Action is barred by the Plan; and (4) Plaintiff has failed to sufficiently plead the elements of the State Law Action. In Independencia's motion to dismiss (the "Independencia Motion to Dismiss"), Independencia contends that: (1) it has an absolute defense under an exculpation clause in the Plan; (2) that Plaintiff fails to establish privity; (3) and Plaintiff's State Law Action fails as a matter of law. In Athena's motion to dismiss (the "Athena Motion to Dismiss"), Athena asserts (1) that Plaintiff lacks standing to bring the State Law Action against Athena; (2) that the State Law Action is barred by the Plan; and (3) that the State Law Action fails as a matter of law. Reorganized Debtors also filed their Motion to Enforce on November 3, 2022, asserting that Independencia is exculpated by the Plan. [Docket No. 40.]

Plaintiff filed its Omnibus Opposition and Memorandum of Law in Opposition to (A) Defendants' Motions to Dismiss First Amended Complaint and (B) Reorganized Debtors' Motion to Enforce the Confirmation Order (the "Plaintiff's Omnibus Opposition") [Docket No. 58] along with a supporting declaration on December 5, 2022. Plaintiff contends that, at most, this Court should only consider whether the exculpatory clause contained in the Plan applies to the State Law claims. Plaintiff further argues that application of the Plan's exculpatory clause to the State Law Claims would be an overly broad interpretation of the clause's language and would render other provisions of the Plan a nullity. Finally, Plaintiff asserts that it has sufficiently plead the elements of the claims raised in the State Law Action. Independencia (the "Independencia Reply") [Docket No. 60], Monomoy (the "Monomoy Reply") [Docket No. 67], Athena (the "Athena Reply")

[Docket No. 64] and Reorganized Debtors (the "Reorganized Debtors' Reply") [Docket No. 62] each filed a reply on December 19, 2022.

Parallel to these filings, Plaintiff also filed its Remand Motion on November 3, 2022, arguing that (1) this Court lacks subject-matter jurisdiction to hear the State Law Action, (2) mandatory abstention applies to the State Law Action and (3) in the event the Court finds that mandatory abstention does not apply, the Court should exercise its discretion to permissively abstain from hearing the State Law Action. [Remand Motion 12, 25, 28.] On December 5, 2022, Independencia filed an objection to the Remand Motion (the "Remand Objection") [Docket No. 54], contending that the Court has either "arising under," "arising in" or "related to" subject-matter jurisdiction, that mandatory abstention is unavailable, and that the Court should deny Plaintiff's request for permissive abstention. [Remand Objection 21.] Reorganized Debtors also filed a statement in support of Independencia's Remand Opposition on December 5, 2022 (the "Statement in Support of Opposition to Remand") [Docket No. 56]. Subsequently, Plaintiff filed a reply to the Remand Objection (the "Remand Reply") [Docket No. 66].

## B. DEBTORS' BANKRUPTCY CASE AND THE TRANSFER OF THE CLAIMS

As part of Debtors' chapter 11 bankruptcy case, Debtors engaged in renegotiations of collective bargaining agreements ("CBAs", individually a "CBA") with several unions, including Independencia, ASPA, ASSA, and STIA. [Complaint ¶¶ 2, 23, 32; Motion to Enforce ¶ 9.] Debtors reached an agreement in principle with Independencia on the renegotiation of the CBA on December 29, 2020, which Defendants claim was modified as a result of a bankruptcy protection covenant negotiated with ASPA on April 6, 2021. [Complaint ¶¶ 33, 36; Independencia Motion to Dismiss 3.] The Court approved the new collective bargaining agreements in its *Order Pursuant to 11 U.S.C. §§ 363(b), 105(a) and Fed. R. Bankr. P. 9019(a) Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia,*

dated April 22, 2021 (the "CBA Order") [Bankr. Docket No. 1101].          The    CBA    Order

granted Independencia certain general unsecured claims in the amount of $47,730,000 (the

"Claims") against the estate of Debtors Aerovías, Aerolitoral and Cargo, which Independencia

could freely sell to another party. [CBA Order ¶ 8.] However, pursuant to an agreement between

Independencia and Debtors, the holder of these Claims was required to support a "complying

plan," including voting in favor of such plan. [*Id.*] The CBA Order also provided that "Debtors,

the Unions, each successor or assignee, or the transferee of the claims allowed pursuant to this

Order" would be bound to the provisions of the CBA Order, including the requirement to support

a complying plan. [*Id.* at ¶ 12.] Subsequently, Plaintiff purchased the Claims in a two-step process

that consisted of six total transactions that used Cowen Special Investments LLC ("Cowen"), a

company that sources and facilitates the purchase of bankruptcy claims, as an intermediary

between Plaintiff and Independencia. [Complaint ¶¶ 123, 169; Independencia Motion to Dismiss

7.] First, Independencia sold its three general unsecured claims, one for each of the three Debtors,

to Cowen. [Complaint ¶ 123, 169; Independencia Motion to Dismiss 7.] Plaintiff alleges that this

first step took place on August 18, 2021, while Independencia asserts that the initial sale occurred

nine days earlier, on August 9, 2021. [Complaint ¶ 169; Independencia Motion to Dismiss 7.] In

the second step, Cowen sold the Claims to Plaintiff on August 18, 2021. [Complaint ¶¶ 169;

Independencia Motion to Dismiss 7.]

The parties dispute the factual circumstances surrounding Plaintiff's eventual purchase of

the Claims. Plaintiff claims that the two-step process was "a single, integrated transaction," while

Independencia asserts that it only participated in the first step and was not involved in the sale of

the Claims by Cowen to Plaintiff. [Complaint ¶ 170; Independencia Motion to Dismiss 7.] Plaintiff

also argues that Athena and Monomoy, as Athena's alter ego, assisted Independencia as advisor

and agent in connection with Independencia's effort to sell the Claims and acted as

Independencia's brokers throughout the sale process. [Complaint ¶¶ 85–87, 117.] Plaintiff contends that, as part of that sale process, Athena represented to Plaintiff that the Claims would be transferred to Plaintiff "with all concomitant statutory and other rights afforded to holders of allowed bankruptcy claims." [*Id.* at ¶ 135; Monomoy Motion to Dismiss 13 n.6.] Athena counters that, to the extent the alleged communications exist, they evidence communications regarding the sale of ASPA's unsecured claims, not those held by Independencia. [Athena Motion to Dismiss 4.] Additionally, Athena states that it did not participate in the second transaction between Cowen and Plaintiff and therefore did not make any representations to Plaintiff regarding the rights that would be transferred with the Claims. [*Id.* at 6–7.] For its part, Monomoy insists that it is not an alter ego of Athena and that it is "a complete stranger to the transaction." [Monomoy Motion to Dismiss 10–11, 13 n.6, 30.]

On December 10, 2021, the Court approved Debtors' disclosure statement and permitted Debtors to solicit votes to confirm the Plan. [Bankr. Docket No. 1807.] Plaintiff sought to oppose the Plan on the basis that the Plan provided inadequate distributions to and unfair treatment of unsecured creditors. [Complaint ¶¶ 111–112.] Plaintiff submitted its votes to reject the Plan on December 15, 2021. [*Id.* at ¶ 213.] Due to the language of the CBA Order, however, the Court, on motion of Debtors, entered an *Order Enforcing the Order Authorizing Entry into New Agreements Establishing New Labor Conditions with ASPA, ASSA, STIA, and Independencia* (the "Enforcement Order") [Bankr. Docket No. 2540], which counted votes on behalf of the Claims in favor of the Plan. While Plaintiff initially appealed this order, ultimately, Plaintiff agreed to a settlement with Debtors wherein Plaintiff received $1.1 million and could vote to reject the Plan with respect to the Aerovias and Aerolitoral Claims. [Complaint ¶¶ 239–240; Motion to Enforce ¶ 20.] In exchange, Plaintiff agreed to vote in favor of the Plan with respect to the Cargo Claim and dismiss its appeal of the Enforcement Order. [Complaint ¶ 239; Motion to Enforce ¶ 20.]

Debtors' Plan contains an exculpation clause for certain claims related to the bankruptcy

case. In full, the exculpation clause (the "Exculpation Clause") provides:

> To the maximum extent permitted by applicable law, no Exculpated Party shall
> have or incur, and each Exculpated Party is hereby released and exculpated from:
> any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of
> Action, remedy, loss and liability for any Claim in connection with, related to, or
> arising out of, the pre-Effective Date administration of the Chapter 11 Cases; the
> negotiation and pursuit of the Disclosure Statement (including any information
> provided, or statements made, in the Disclosure Statement or omitted therefrom)
> and the solicitation of votes for, and confirmation of, the Plan; the funding of the
> Plan; the occurrence of the Effective Date; the DIP Facility, the DIP Credit
> Agreement Amendment, the Subscription Agreement, the Equity Financing
> Commitment Letter, the Term Sheet, the Debt Financing Commitment Letter, the
> exit financing process, preparation and delivery of the Initial Valuation Materials
> and the Final Valuation Materials; the Restructuring Transactions, the PLM Stock
> Participation Transaction, the Tender Offer, the Statutory Equity Rights Offering,
> the Equity Financing, the Debt Financing, and related agreements, instruments and
> other documents, and the negotiation, formulation, preparation or implementation
> thereof, and the transactions in furtherance of any of the foregoing, in each case
> other than Claims or Causes of Action arising out of, or related to, any act or
> omission of an Exculpated Party that is a criminal act, constitutes gross negligence
> or willful misconduct (including, without limitation, actual fraud) or claims for
> legal malpractice, release of which is prohibited by Rule 1.8(h) of the New York
> Rules of Professional Conduct (22 N.Y.C.R.R. § 1200). Notwithstanding anything
> herein to the contrary, nothing in the Plan shall release any post-Effective Date
> obligations of any Entity.

[Plan section 8.10.] The Plan defines "Exculpated Party" as:

> (a) the Debtors; (b) the Debtors' current and former officers, directors, and
> managers; (c) the DIP Lenders; (d) the DIP Agent; (e) the Senior Notes Indenture
> Trustee; (f) the Creditors' Committee and each of its current and former members;
> (g) each of the Unions; (h) the Equity Financing Commitment Parties; (i) the Debt
> Financing Commitment Parties; (j) the Ad Hoc Group of Senior Noteholders and
> its members; (k) the Ad Hoc Group of Unsecured Claimholders and its members;
> (l) the Ad Hoc Group of BSPO Investors and its members; (m) PLM; (n) the
> CEBURES Common Representative, and (o) with respect to each of the foregoing
> clauses (a) through (n), to the fullest extent permitted by law, such Person's Related
> Parties.

[Plan section 1.1.] The Plan defines "Related Party" as:

> with respect to a Person, such Person's predecessors, successors, assigns,
> subsidiaries, Affiliates, managed accounts and funds, and all of their 25 respective
> current and former officers and directors, principals, equity holders, members,
> partners, managers, employees, agents, financial advisors, attorneys, accountants,

investment bankers, consultants, investment managers, investment advisors, fund advisors and other professionals.

[Plan section 1.1.] The Plan was confirmed pursuant to the Court's confirmation order on February 4, 2022 (the "Confirmation Order") [Bankr. Docket No. 2668], and Debtors and Defendants now seek to enforce these provisions. On March 17, 2022, Debtors filed a *Notice of (i) Occurrence of Effective Date and (ii) Final Deadlines for Filing Certain Claims* (the "Effective Date Notice") [Docket No. 2816] stating that the Plan had been substantially consummated and that the effective date of the Plan had occurred. The Court entered the Final Decree and closed the Reorganized Debtors' bankruptcy case on December 22, 2022.

## DISCUSSION

### A. REORGANIZED DEBTORS' MOTION TO ENFORCE AND THE RELATED DEFENSES RAISED IN DEFENDANTS' MOTIONS TO DISMISS

As an initial matter, the Court must determine whether the Exculpation Provision applies, and, therefore, Plaintiff is precluded from asserting the State Law Claims. Bankruptcy courts have inherent jurisdiction to interpret and enforce their own orders independent of their statutory jurisdiction under 28 U.S.C. § 1334.[3] *In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996); *see also Langston Law Firm v. Mississippi*, 410 B.R. 150, 155 (S.D.N.Y. 2008). Confirmed plans of reorganizations are binding contracts, and courts interpret confirmed plans according to principles of contract law. *In re Dynegy Inc.*, 486 B.R. 585, 590 (Bankr. S.D.N.Y. 2013). Under New York law, the initial interpretation of a contract "is a matter of law for the court to decide." *K. Bell & Assocs., Inc. v. Lloyd's Underwriters*, 97 F.3d 632, 637 (citing *Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 299 (2d Cir.1996)). If the language of the contract is unambiguous, a court must give effect to the plain language of the contract as written. *International Multifoods Corp. v. Commercial Union Ins. Co.*, 309 F.3d 76, 83 (2d Cir. 2002). Contractual language is

---

[3] As decided *infra* Section B.1, the Court also has "arising in" jurisdiction over the State Law Action.

ambiguous where "the terms of the contract 'could suggest more than one meaning when viewed objectively by a reasonably intelligent person who has examined the context of the entire integrated agreement and who is cognizant of the customs, practices, usages and terminology as generally understood in the particular trade or business.'" *Law Debenture Trust Co. of New York v. Maverick Tube Corp.*, 595 F.3d 458, 466 (2d Cir. 2010) (quoting *International Multifoods Corp.*, 309 F.3d at 83).

In the Motion to Enforce, Reorganized Debtors contend that the Exculpatory Clause covers the transactions that form the basis of the State Law Action because  Independencia is an "Exculpated Party" as defined in the Plan and, accordingly, the Exculpatory Clause bars Plaintiff's claims against Independencia. [Motion to Enforce ¶ 29.] Reorganized Debtors assert that the transfer of the Claims are "inextricably tied" to voting on the Plan because the State Law Action focuses on Plaintiff's inability to vote on the Claims as it wished. [*Id.* at ¶ 30.] Furthermore, Reorganized Debtors claim that the transfer of the Claims falls within the Exculpatory Clause because it is a "transaction in furtherance of" the administration of Debtors' chapter 11 case and the implementation of the DIP facility. [*Id.* at ¶ 31.] Reorganized Debtors also note that Independencia, as a union, fits within the definition of "Exculpated Party." [*Id.* at ¶ 29.] Reorganized Debtors state that they have been called to indemnify Independencia, granting them standing to seek enforcement of the Confirmation Order. [*Id* ¶ 28.] Reorganized Debtors further argue that barring the State Law Action is in the public interest, as the judicial system and the public both suffer when a court order is undermined. [*Id* ¶ 32.]

In each of their respective motions to dismiss, Defendants also claim that the State Law Action is barred by the Plan's Exculpatory Clause. Like Reorganized Debtors, Independencia asserts that it fits within the definition of "Exculpated Party" in the Plan and that the Exculpatory Clause thus covers the transfer of the Claims. [Independencia Motion to Dismiss 15–16.]

Monomoy contends that the Exculpatory Clause bars any claims by creditors that arise out of or are related to the solicitation of votes for and confirmation of the Plan, including the State Law Action. [Monomoy Motion to Dismiss 17–18.] Finally, Athena asserts that the State Law Action falls within, and is therefore precluded by, the language of the Exculpatory Clause. [Athena Motion to Dismiss 13–14.]

Plaintiff opposes efforts to enforce the Exculpatory Clause as a bar to the State Law Action. First, Plaintiff states that the Exculpatory Clause is effectively a nonconsensual third-party release and must be narrowly tailored in accordance with caselaw. [Plaintiff's Omnibus Opposition 16.] Plaintiff contends that exculpatory clauses in plans of reorganization do "not provide blanket protection to non-estate fiduciaries," but rather only provide protection as to transactions supervised and approved by the Court. [*Id.* at 16–17]; *see also In re LATAM Airlines Grp. S.A.*, 2022 WL 2206829, at *49–50 (Bankr. S.D.N.Y. June 18, 2022). Since the sale transactions occurred outside the bankruptcy and were not "court approved," Plaintiff claims that the transactions are not barred by a properly narrow reading of the Exculpatory Clause. [Plaintiff's Omnibus Opposition 16–18.]

Second, Plaintiff argues that Reorganized Debtors' and Defendants' construction of the Exculpatory Clause is overbroad, as it would eliminate almost any cause of action arising out of the transfer of bankruptcy claims. [*Id.* at 19.] Plaintiff states that this construction of the Exculpatory Clause would remove all meaning from the Plan's "opt in" mechanism for the release of claims against third parties because creditors that refused to "opt-in" to preserve their claims would still be precluded from pursuing these claims. [*Id.* at 20.]

Third, Plaintiff states that the State Law Action is not covered by the bankruptcy events outlined in the Exculpatory Clause. [*Id.* at 20–25.] Plaintiff argues that: (1) the State Law Action is not in connection with, related to, or arising out of the pre-effective date administration of

10

Debtors' bankruptcy case, nor is it (2) in connection with, related to, or arising out of the solicitation of votes for, and confirmation of, Debtors' Plan. [*Id.*] Plaintiff states that Independencia's sale of the Claims was done of its own volition and provided no benefit to Reorganized Debtors or Debtors' estate. [*Id.* at 21.] According to Plaintiff, a finding that the sale of the Claims falls within the scope of the Plan would protect almost any transaction made by an Exculpated Party. [*Id.*] Moreover, Plaintiff states that no outcome of the State Law Action will affect or undermine the Court's decisions or orders preceding the effective date of the Plan. [*Id.* at 22.] Additionally, Plaintiff contends that the sale of the Claims occurred months before the filing of the Plan, solicitation of votes, or hearings on confirmation, and therefore it could not be in connection with, related to, or arising out of the solicitation of votes for, and confirmation of, Debtors' Plan. [*Id.* at 22–23.] Plaintiff states that Debtors argued, and the Court found, that the CBA Order, including the obligation to support a "complying plan," did not constitute solicitation of votes for the Plan. [*Id.* at 23.]

Fourth, Plaintiff contends that, even if the Exculpatory Clause covered the causes of action raised by the State Law Action, the tort-based claims in the State Law Action fall within a carve-out in the Exculpatory Clause for claims based on intentional wrongdoing. [*Id.* at 26.] Finally, Plaintiff argues that Monomoy was either not an agent of Independencia nor acting within the scope of any agency during the sale of the Claims, and therefore Monomoy is not an "Exculpated Party" as defined in the Plan. [*Id.* at 28.]

In reply, Reorganized Debtors reassert that the State Law Action is barred by the Plan and contend that the Exculpatory Clause was negotiated specifically to preclude future litigation by Plaintiff. [Reorganized Debtors' Reply ¶¶ 3–4.] Reorganized Debtors also argue that Plaintiff is seeking to relitigate an adverse decision that occurred in the main bankruptcy case. [*Id.* at ¶ 5.] In response to Plaintiff's contention that Reorganized Debtors' construction of the Exculpatory

Clause is overly broad, Reorganized Debtors counter that the Exculpatory Clause is limited to those claims that arose out of the negotiation of the CBA Order and would not apply to other claims unrelated to the CBA Order. [*Id.* at ¶ 6.] As the Claims arguably would not exist without and are subject to the CBA Order, Reorganized Debtors argue that the Claims are "inextricably linked" to the CBA Order and fall within the bankruptcy events covered by the Exculpatory Clause. [*Id.* at ¶ 8.] As the CBA Order and the Plan were "court-approved" transactions, Reorganized Debtors claim that the sale of the Claims falls within the scope of the Exculpatory Clause. [*Id.* at ¶ 5.] Reorganized Debtors contend that, therefore, even a narrow reading of the Exculpatory Clause supports barring the State Law Action. [*Id.*]

Reorganized Debtors also state that if Exculpated Parties cannot be released unless all creditors opted into the Plan's third-party release, the Exculpatory Clause would be rendered meaningless. [*Id.*] As to Athena and Monomoy's lack of agency status, Reorganized Debtors argue that, by Plaintiff's own argument, Independencia would not be liable because the agents' actions could not be imputed to the union. [*Id.* at ¶ 7.] Finally, Reorganized Debtors note that Plaintiff did not object to confirmation of the Plan, including the Exculpatory Clause, and assert that Plaintiff has waived its right to challenge the Exculpatory Clause. [*Id.* at ¶¶ 10–11.]

Defendants also reasserted their arguments in their reply briefs to Plaintiff's Omnibus Opposition. [Independencia Reply 3–5; Monomoy Reply 8; Athena Reply 1–3.] Independencia states that Plaintiff received a settlement and ultimately did not object to the Exculpatory Clause or confirmation of the Plan. [Independencia Reply 3.] Independencia also asserts that there is no basis to reduce the scope of or strike the Exculpatory Clause. [*Id.*] Independencia argues that broad exculpatory releases for non-debtors are routinely enforced where the exculpated party played a "significant role" in the bankruptcy. [*Id.* at 4.] Here, Independencia contends that the Claims arose out of bargains that were essential to the Debtors' successful reorganization. [*Id.*] Since the Claims

12

played an important role in the voting on confirmation of the Plan, Independencia asserts that the sale of the Claims was not simply an out-of-court transaction that occurred separate from the main bankruptcy case. [*Id.* at 4–5.]  Finally, Independencia states that Plaintiff's construction of the Exculpatory Clause's carve out would render the Exculpatory Clause meaningless. [*Id.* at 6.]

Athena first argues that, since Plaintiff is challenging the scope of the Exculpatory Clause, Plaintiff is attempting to relitigate the approval of the Exculpatory Clause and the Confirmation Order. [Athena Reply 1–2.] Athena also asserts that, as the basis of Plaintiff's claims is that it could not vote against the Plan, the sale of the Claims arises out of or relates to the Plan or solicitation of votes for the Plan and thus is barred by the Exculpatory Clause. [*Id.* at 2–3.] Next, Athena contends that Plaintiff attempts to avoid the language of the Exculpatory Clause by artificially reframing its allegations as tort claims. [*Id.* at 3.] Athena further argues that, as an agent of Independencia, it is an "Exculpated Party" and is therefore protected by the Exculpatory Clause. [*Id.* at 3–4.]

Monomoy incorporates Athena's arguments but also makes one further point. Monomoy notes that Plaintiff argues that: (1) Monomoy is liable because it is an alter ego of Athena or (2) Monomoy cannot be exculpated because it was not involved in the sale of the Claims and therefore is not protected under the Exculpatory Clause. [Monomoy Reply 8–9.] Monomoy states that it cannot be held liable under either argument. If the first argument is true, Monomoy states that it is exculpated under the Exculpatory Clause as an agent of Independencia. [*Id.*] If the second argument is true, Monomoy alleges it was not involved in the sale of the claims and therefore allegations against Athena cannot be imputed to Monomoy. [*Id.*]

As this Court issued the order approving Debtors' Plan, including the Exculpation Provision, it has inherent authority to interpret and enforce that order. *See In re Chateaugay Corp.*, 201 B.R. 48, 62 (Bankr. S.D.N.Y. 1996); *Langston Law Firm v. Mississippi*, 410 B.R. 150, 155

13

(S.D.N.Y. 2008); [Confirmation Order.] The Court finds that the Exculpatory Clause is unambiguous and does not preclude Plaintiff from pursuing its claims against Defendants. The Exculpatory Clause states that it applies to

> any Claim, obligation, suit, judgment, damage, demand, debt, right, Cause of Action, remedy, loss and liability for any Claim in connection with, related to, or arising out of, the pre-Effective Date administration of the Chapter 11 Cases; the negotiation and pursuit of the Disclosure Statement (including any information provided, or statements made, in the Disclosure Statement or omitted therefrom) and the solicitation of votes for, and confirmation of, the Plan . . . the DIP Facility, . . . related agreements, instruments and other documents, and the negotiation, formulation, preparation or implementation thereof, and the transactions in furtherance of any of the foregoing . . . .

[Plan section 8.10.] The Exculpatory Clause does not explicitly prevent litigation related to transactions between creditors, and nothing in this language suggests that the Exculpatory Clause applies to these transactions. [Plaintiff's Omnibus Opposition 20–25.] The sold claims themselves do involve rights related to the bankruptcy case. However, as Plaintiff argues, those transactions, and the actions related thereto, that form the basis for the State Law Action do not involve rights related to the bankruptcy case. As Reorganized Debtors note in their Motion to Enforce, the CBA Order was the result of "extensive good-faith negotiations" and integral to the reorganization of Debtors. [Motion to Enforce ¶¶ 9, 31.] Other listed items in the Exculpatory Clause, such as the disclosure statement, Plan confirmation, and the DIP facility, likewise required extensive negotiation and participation by Debtors. [*Id.* at ¶¶ 29–32.] Conversely, Debtors played no role in negotiating or consummating the sale of the Claims [Independencia Motion to Dismiss 7–9.], and the sale of the Claims was not an integral part of Debtors' reorganization. In fact, since the CBA Order required the holder of the Claims to support the Plan [Remand Opposition 18], the sale or ultimate ownership of the Claims was irrelevant to confirmation of the Plan. The representations made by Defendants in pursuit of the sale of the Independencia's claims are not connected with, related to, or arising out of Debtors' disclosure statement, the DIP Facility, CBA Orders or the

14

Plan. [Plaintiff's Omnibus Opposition 16–25.] In light of the extensive negotiations that resulted in Debtors' successful reorganization, the Court does not read the Exculpatory Clause to include items that would have minimal or no effect on Debtors' reorganization.

Reorganized Debtors contend that the sale of the Claims is "inextricably tied" to voting on the Plan because the State Law Action focuses on Plaintiff's inability to vote the Claims as it wished. [Motion to Enforce ¶ 29.] Reorganized Debtors also contend that the sale of the Claims was a "transaction in furtherance of" the administration of Debtors' chapter 11 case and the implementation of the DIP facility. [*Id.* at ¶ 30.] The Court is unpersuaded by these arguments. First, the State Law Action concerns alleged representations made regarding the sale of the Claims, not Plaintiff's right to vote the Claims against the Plan. *See* [Complaint ¶¶ 244–315.] The holders of the Claims were entitled to vote on the Plan in compliance with the CBA regardless of ownership, and the sale of the Claims did not modify any of the voting rights to which the holder of the Claims was allowed. Second, the sale of the Claims is not a "transaction in furtherance of" the administration of Debtors' chapter 11 case and the implementation of the DIP facility. Reorganized Debtors do not identify any benefits of the sale of the Claims to their reorganization. Instead, Independencia is the party that received the benefit of the bargain.

The Court finds Independencia's arguments regarding exculpation similarly unconvincing. Independencia argues that the Claims "were created as part of a comprehensive resolution of collective bargaining issues, to aggressively participate in the chapter 11." [Independencia Reply 5.] However, Plaintiff does not contest its ability to participate in Debtors' bankruptcy case, but instead raises causes of action related to the sale of the Claims. Independencia has not adequately alleged that the sale of the Claims was a material part of the reorganization process. While the Claims themselves may have provided the holder some rights to participate in Debtors' bankruptcy case, the sale of the Claims is a transaction outside the bankruptcy process. *See In re LATAM*

15

*Airlines Grp. S.A.*, 2022 WL 4229500, at *5 (Bankr. S.D.N.Y. Sept. 13, 2022). Therefore, the Court finds that the language of the Exculpatory Clause does not bar the State Law Action.

Finally, the Court finds that rejecting the application of the Exculpatory Clause to the State Law Action also serves the public interest. The State Law Action involve a dispute among Debtors' creditors and does not involve claims against the Debtors themselves. The State Law Action is based on representations made during a sale of bankruptcy claims separate from the proceedings of Debtors' bankruptcy case. Reorganized Debtors' arguments imply that creditors should be able to insulate themselves from any alleged unlawful activity committed during sale of their claims through exculpatory language in a plan of reorganization. To allow the Exculpatory Clause to apply as broadly as Defendants and Reorganized Debtors suggest would preclude any recourse for alleged contract breaches or tortious actions committed in the course of the transfer of bankruptcy claims. Therefore, the Exculpatory Clause is not determinative of the State Law Action, and the Court need not address whether the State Law Action falls within the Exculpatory Clause's carve out provision. Thus, the Motion to Enforce and Defendants' Motions to Dismiss, solely to the extent they raise exculpation under the Plan as a defense, are denied.

**B. PLAINTIFF'S MOTION TO REMAND**

**1. <u>The Court has "arising in" jurisdiction over the State Law Action</u>**

Pursuant to 28 U.S.C. § 1334(b), district courts have "original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). District courts may refer "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges for the district. 28 U.S.C. § 157(a). "Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments,

subject to review under section 158 of this title." 28 U.S.C. § 157(b)(1). Thus, bankruptcy courts have three statutory bases for exercising jurisdiction over civil proceedings: (1) matters "arising under" title 11, (2) matters "arising in" title 11, and (3) matters "related to" cases under title 11. *In re Aramid Ent. Fund, LLC*, 628 B.R. 584, 594 (Bankr. S.D.N.Y. 2021). While 11 U.S.C. § 1334 does not expressly limit bankruptcy court jurisdiction post-confirmation, caselaw generally recognizes that bankruptcy court jurisdiction shrinks once confirmation occurs. *In re Gen. Media, Inc.*, 335 B.R. 66, 73 (Bankr. S.D.N.Y. 2005). The difference between "core" and "non-core" proceedings may also be less relevant post-confirmation. *Id.* at 74.

"Cases 'arise under' title 11 when the cause of action or substantive right claimed is created by the Bankruptcy Code." *In re AOG Ent., Inc.*, 569 B.R. 563, 574 (Bankr. S.D.N.Y. 2017); *In re Fairfield Sentry Ltd. Litigation*, 458 B.R. 665, 674 (S.D.N.Y. 2011) (citing *MBNA Am. Bank, N.A. v. Hill*, 436 F.3d 104, 108–09 (2d Cir. 2006)). "Arising in" jurisdiction encompasses any proceeding that "[is] not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." *Baker v. Simpson*, 613 F.3d 346, 351 (2d Cir. 2010).

Even if an action does not "arise under" or "arise in" title 11, a bankruptcy court may exercise jurisdiction over the action if it is "related to" a case under title 11. In *Celotex Corp. v. Edwards*, the Supreme Court found that the choice of language in 11 U.S.C. § 1334 "suggests some breadth" to the scope of "related to" jurisdiction. *Celotex Corp. v. Edwards*, 514 U.S. 300, 307–08 (1995). However, that grant of jurisdiction is not limitless. *Id.* at 308. When determining whether an action is "related to" a bankruptcy case, courts in the Second Circuit routinely apply the "conceivable effects test," which asks whether an action's outcome "might have any conceivable effect on the bankrupt estate." *SPV Osus Ltd. v. UBS AG*, 882 F.3d 333, 339 (2d Cir. 2018) (quoting *Parmalat Capital Fin. Ltd. v. Bank of Am. Corp.*, 639 F.3d 572, 579 (2d Cir. 2011)).

Since the estate generally ceases to exist upon confirmation, some courts within the Second Circuit have applied a stricter "close nexus" test when deciding whether "related to" bankruptcy jurisdiction exists post-confirmation. *See In re Ener1, Inc.*, 558 B.R. 91, 96 (Bankr. S.D.N.Y. 2016). A matter has a "close nexus" to the bankruptcy case where it "affects the interpretation, implementation, consummation, execution, or administration of the confirmed plan or incorporated litigation trust agreement." *In re Gen. Media*, 335 B.R. at 73 (quoting *In re Resorts Int'l, Inc.*, 372 F.3d 154, 168–69 (3d Cir. 2004)). Some courts also require for the Debtors' plan to provide for retention of jurisdiction over the dispute to satisfy the post-confirmation "close nexus" test. *Id.* at 74. Courts in the Second Circuit have applied both the "conceivable effect" and "close nexus" tests in the context of post-confirmation proceedings. *See Allstate Ins. Co. v. CitiMortgage, Inc.*, 2012 WL 967582, at *5 (S.D.N.Y. 2012); *In re Lehman Bros. Holdings Inc.*, 2018 WL 3869606, at *6 (Bankr. S.D.N.Y. 2018).

Plaintiff contends that Independencia, the removing party, has not met its burden in establishing that the Court has subject-matter jurisdiction over the State Law Action. [Motion to Remand 10.] First, Plaintiff states that the Court does not have "arising in" jurisdiction. [*Id.* at 12.] Plaintiff notes that state law, not the Bankruptcy Code, is the source of the causes of action raised in the State Law Action and that the State Law Action does not fall within the list of core proceedings outlined in 28 U.S.C. § 157(b). [*Id.* at 13.] Plaintiff also contends that the State Law Action is neither unique to, nor uniquely affected by, the Debtors' bankruptcy and does not affect a core bankruptcy function. [*Id.* at 14.] Plaintiff concludes that exercising bankruptcy jurisdiction here would impermissibly expand the Court's jurisdiction to any purchase and sale of bankruptcy claims. [*Id.*]

Plaintiff further argues that the State Law Action does not "relate to" the Debtors' bankruptcy under either the "conceivable effect" test or "close nexus" test. [*Id.* at 15.] Plaintiff

first notes that, since the State Law Action is a post-confirmation proceeding, the "close nexus" test should apply. [*Id.*] Plaintiff states that the State Law Action does not have a "close nexus" to the bankruptcy case because the State Law Action falls outside the narrow jurisdiction of the bankruptcy court post-confirmation. [*Id.* at 19.] Even if the Court applies the "conceivable effect" test, Plaintiff states that the State Law Action is still not "related to" Debtors' bankruptcy. [*Id.* at 17.] Plaintiff argues that the dispute in the State Law Action is between non-debtors and does not involve estate property. [*Id.* at 16.] Moreover, Plaintiff contends that, post-confirmation, property of the estate is vested in the reorganized debtor, and, therefore, a post-confirmation proceeding cannot affect Debtors' estate. [*Id.* at 16–17.] Plaintiff also states that because ninety-nine percent of all allowed claims have been paid their distributions, there is no estate left to affect. [*Id.* at 17.]

Finally, Plaintiff asserts that the Exculpatory Clause and possible indemnification of Independencia by Reorganized Debtors are not bases for jurisdiction. [*Id.* at 19, 23.] Plaintiff contends that interpretation of the Exculpatory Clause does not require specialized knowledge by the bankruptcy court. [*Id.* at 20.] Instead, Plaintiff claims that a state court would be competent to apply the contract law principles required to interpret the Exculpatory Clause. [*Id.*] Plaintiff also argues that the State Law Action falls outside of the Exculpatory Clause because Plaintiff's causes of action are not "in connection with, related to, or arising out of the solicitation of votes for, and confirmation of, the Plan." [*Id.* at 20–21.] Plaintiff claims that the representations that form the basis for the State Law Action occurred months before Debtors filed the Plan or solicited votes. [*Id.*] Furthermore, Plaintiff states that the CBA Order is not "in connection with" or "related to" solicitation or confirmation of the Plan because the CBA Order was not specific to the Plan (which had not yet been filed) and was distinct from the process of vote solicitation. [*Id.* at 21–22.] Plaintiff also disputes that indemnification can form the basis for jurisdiction. Plaintiff asserts that

Reorganized Debtors have no obligation to indemnify Independencia, either under an agreement with Independencia or New York state law. [*Id.* at 23.]

Independencia contends that this Court has jurisdiction over the State Law Action. First, Independencia states that the Court has inherent jurisdiction to interpret and enforce its own prior orders. [Remand Objection 13–14.] Furthermore, Independencia argues that Plaintiff concedes that the State Law Action requires interpretation of the Confirmation Order, including the Exculpatory Clause, as Plaintiff argues that the State Law Action falls within a carve out in the Exculpatory Clause. [*Id.* at 14.] Independencia also states that permitting the State Law Action to proceed in state court could undermine this Court's orders, as this Court is in the best position to interpret the CBA Order, Exculpatory Clause and settlement between Plaintiff and Debtors. [*Id.* at 15.]

Next, Independencia argues that the Court has "arising in" jurisdiction over the State Law Action. [*Id.* at 16.] Since determination of the State Law Action requires interpretation and enforcement of Court orders, Independencia argues that the State Law Action "arises in" Debtors' bankruptcy case. [*Id.*] Furthermore, Independencia contends that the State Law Action is merely an extension of proceedings involving the CBA Order and Confirmation Order that have already been held before the Court. [*Id.* at 17–19.] Lastly, Independencia states that, even if the Court finds that it does not have "arising in" jurisdiction, the Court has "related to" jurisdiction over the State Law Action. [*Id.* at 20.] Independencia asserts that the State Law Action has a "close nexus" to the bankruptcy case because it involves interpretation and enforcement of provisions of the Court's orders and the Plan includes a broad retention of jurisdiction. [*Id.* at 20–21.]

In its reply, Plaintiff first argues that Debtors' bankruptcy case has been closed, precluding "related to" jurisdiction. [Remand Reply 5.] Next, Plaintiff claims that Independencia is attempting to manufacture jurisdiction by accusing Plaintiff of attacking the Exculpatory Clause and Confirmation Order. [*Id.* at 6.] Third, Plaintiff argues that the Court's inherent jurisdiction is not

independent from its statutory jurisdiction under 28 U.S.C. § 1334. [*Id.* at 8.] Finally, Plaintiff reasserts that, should the Court exercise jurisdiction over the State Law Action, it should only do so to determine the extent to which the Exculpatory Clause applies.[4] [*Id.* at 9.]

The United States District Court for the Southern District of New York has referred "any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11" to the bankruptcy judges. Amended Standing Order of Reference, M-431 (S.D.N.Y. Jan. 31, 2012) (Preska, C.J.). The Court must decide whether the State Law Action falls within any of the three bases for bankruptcy court jurisdiction. The State Law Action does not "arise under" the Bankruptcy Code, as the claims raised in the State Law Action are based on state law rather than created by the Bankruptcy Code. *See In re AOG Ent., Inc.*, 569 B.R. at 574; [Complaint.] The State Law Action, however, "arises in" Debtors' bankruptcy case. While the State Law Action does not directly implicate rights under title 11, the claims sold to Plaintiffs would not exist except for Debtors' bankruptcy case. Had the Debtors not filed bankruptcy, there would be no claims to sell, and, therefore, no causes of action against Defendants. Thus, the Court has "arising in" subject-matter jurisdiction over the State Law Action.

While the State Law Action would not exist without Debtors' bankruptcy case, it is not "related to" that case under either the "conceivable effects" test or the "close nexus" test. As confirmation has already occurred in Debtors' bankruptcy case, the Court's jurisdiction shrinks. *See In re Gen. Media*, 335 B.R. at 73. Reorganized Debtors assert that the Plan had been "substantially consummated," and the effective date of the Plan had occurred, on March 17, 2023. [Effective Date Notice 1.] According to Reorganized Debtors, substantially all distributions in the bankruptcy case have been made, including ninety-nine percent of the distribution of shares, ninety-nine percent of the distribution of cash and all transfers of property. [Hr'g Tr., Bankr.

---

[4] As set forth *supra* Section A, the Court has inherent authority to interpret and enforce its orders.

Docket No. 2966, 6–7.] This Court has entered a final decree in the main bankruptcy case, and the case has been closed. [Final Decree, Bankr. Docket No. 2962.] The State Court Action cannot have any "conceivable effect" on Debtors' estates as the estates contain virtually no assets. [Hr'g Tr. 6–7, Bankr. Docket No. 2966.] Furthermore, the State Court Action will not "affect[] the interpretation, implementation, consummation, execution, or administration of the confirmed plan" because the Plan is substantially consummated, and Reorganized Debtors have made nearly all contemplated distributions. *In re Gen. Media*, 335 B.R. at 73; [Effective Date Notice 1.] Even if Independencia were to successfully call upon Reorganized Debtors for indemnification, this burden would fall upon the Reorganized Debtors and not affect the property of the estate or the implementation of Reorganized Debtors' Plan. [Remand Opposition 21 n.9.] Therefore, the Court does not have "related to" bankruptcy jurisdiction over the State Court Action.

## 2.   **Mandatory abstention does not apply.**

Pursuant to 28 U.S.C. § 1334(c), bankruptcy courts must abstain from hearing an action where:

> (1) the motion to abstain was timely; (2) the action is based on a state law claim; (3) the action is "related to" but not "arising in" a bankruptcy case or "arising under" the Bankruptcy Code; (4) Section 1334 provides the sole basis for federal jurisdiction; (5) an action is commenced in state court; and (6) that action can be "timely adjudicated" in state court.

*In re AOG Ent., Inc.*, 569 B.R. at 572. Mandatory abstention requires all six factors to be satisfied. *In re Amanat*, 338 B.R. 574, 581 (Bankr. S.D.N.Y. 2005). While conflicting caselaw exists regarding the party that bears the burden of proof on a remand motion, courts in this district generally place the burden of proof on the party opposing remand. *See id.* at 573.  In determining whether an action can be "timely adjudicated," the Court will evaluate four factors: (1) the backlog of the state court calendar in relation to the federal court calendar, (2) the complexity of the issues and the relative expertise of the forums, (3) the status of the relevant bankruptcy proceeding, and

(4) whether the state court proceeding would prolong administration of the estate. *Parmalat*, 639 F.3d 572, 580 (2d Cir. 2011). "A state court may be a 'timely' forum, even if it requires longer to adjudicate an action than a federal court, as long as the relevant bankruptcy proceedings will not be hindered by the relative delay." *Post Investors LLC v. Gribble*, 2012 WL 4466619, at *5 (S.D.N.Y. Sept. 27, 2012).

Plaintiff argues that mandatory abstention applies because (1) its motion is timely, (2) the State Law Action is based on state contract and tort law, (3) the State Law Action is non-core, (4) Independencia's sole basis for removal is statutory, (5) the State Law Action was commenced in New York state court, and (6) the "timely adjudication" factor is insignificant. [Remand Motion 26–27.] Independencia responds in its Remand Objection that (1) the Court has inherent authority in addition to statutory authority to hear the State Law Action, (2) the State Law Action is a core proceeding because the Court has "arising in" jurisdiction and (3) the matter cannot be timely adjudicated in state court. [Remand Opposition 13–20; 21–23.]

The parties do not dispute that (i) the Motion to Remand was timely filed, (ii) the action is based on state law claims and (iii) the action was commenced in state court. Moreover, with the Exculpatory Clause issue decided, *see supra* Section A, an interpretation of the Confirmation Order is no longer required, and the State Law Action's only basis for federal jurisdiction is 28 U.S.C. § 1334. However, as noted *supra*, the State Law Action "arises in" the Debtors' bankruptcy case for jurisdictional purposes. *See In re Casual Male Corp.*, 317 B.R. 472, 478 (Bankr. S.D.N.Y. 2004). Therefore, mandatory abstention does not apply.

**3.   <u>The Court exercises its discretion to remand the State Court Action.</u>**

Even where a bankruptcy court is not required to abstain, it may still exercise its discretion to abstain. Under 28 U.S.C. § 1334(c)(1), nothing precludes a court, "in the interest of justice, or in the interest of comity with State courts or respect for State law, from abstaining from hearing a

particular proceeding arising under title 11 or arising in or related to a case under title 11." 28

U.S.C. § 1334(c)(1). Furthermore, a court "may remand such claim or cause of action on any

equitable ground." 28 U.S.C. § 1452(b). The considerations for abstention and equitable remand

are substantially similar. *See In re George Washington Bridge Bus Station Dev. Venture LLC*, 2022

WL 1714176, at *6 (Bankr. S.D.N.Y. May 25, 2022). In *In re Solutia, Inc.*, the bankruptcy court

outlined twelve factors that courts should consider when determining whether to abstain from

deciding a matter. *In re Solutia*, 2023 WL 5423962, at *10 (Bankr. S.D.N.Y. Aug. 23, 2023) (citing

*In re Old Carco LLC*, 636 B.R. 347, 357–58 (Bankr. S.D.N.Y. 2022)). These factors are as follows:

> (1) the effect or lack thereof on the efficient administration of the estate if a court recommends abstention; (2) the extent to which state law issues predominate over bankruptcy issues; (3) the difficulty or unsettled nature of the applicable state law; (4) the presence of a related proceeding commenced in state court or other nonbankruptcy court; (5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334; (6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case; (7) the substance rather than form of an asserted "core" proceeding; (8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court; (9) the burden on the court's docket; (10) the likelihood that the commencement of the proceeding in a bankruptcy court involves forum shopping by one of the parties; (11) the existence of a right to a jury trial; and (12) the presence in the proceeding of nondebtor parties.

*Id.* Courts may consider one or more of these factors but need not consider all twelve. *In re Tronox*,

603 B.R. 712, 726 (Bankr. S.D.N.Y. 2019) (citing *In re Cody, Inc.*, 281 B.R. 182, 190 (S.D.N.Y.

2002)). Courts give the most weight to the effect on the administration of the estate, the

predominance of state law issues and whether the proceeding is core or non-core. *Fruit of the Loom*

*v. Magnetek, Inc.*, 407 B.R. 593, 600 (Bankr. D. Del. 2009). In evaluating the seventh factor, some

courts distinguish between "procedurally core" cases where state law issues predominate and

"substantively core" cases where issues of bankruptcy law predominate. *In re Casual Male Corp.*,

317 B.R. at 478.

24

Plaintiff argues that, even if the Court finds that the factors for mandatory abstention are not satisfied, the Court should exercise its discretion to permissively abstain from hearing and deciding the State Law Action. [Remand Motion 28.] First, Plaintiff states that the State Law Action is entirely between non-debtor parties and only asserts state law claims. [*Id.* at 30.] Furthermore, Plaintiff contends that principles of comity support remand, as Plaintiff does not allege any federal claims and the sole basis for the Court's jurisdiction is statutory. [*Id.*] Plaintiff also argues that the State Law Action will have a negligible effect on Debtors' estate as it has largely been administered and the State Law Action does not involve Reorganized Debtors. [*Id.*] Finally, Plaintiff asserts that a state court is capable of timely adjudicating the State Law Action. [*Id.*]

Independencia argues that the facts of the case weigh against permissive abstention. Specifically, Independencia contends that the third, fifth, sixth, seventh, eighth, ninth, tenth and twelfth factors all weigh against abstention. [Remand Objection 23.] For the third factor, Independencia states that the state law claims are not novel or complex, weighing against remand. [*Id.* at 23–24.] Independencia also states that the Court has inherent jurisdiction to interpret and enforce its own orders. [*Id.* at 24.] As for the sixth and seventh factors, Independencia states that the State Law Action "arises in" and is "inextricably intertwined with" Debtors' bankruptcy. [*Id.*] Under the eighth factor, Independencia states that the State Law Action is not easily severable from the bankruptcy because the Court must interpret the effect of its own orders and determine the impact of the negotiated settlement between Debtors and Plaintiff. [*Id.*] Furthermore, Independencia states that the State Law Action cannot be timely adjudicated in state court due to the backlog of cases in the New York State judicial system. [*Id.* at 24–25.] Independencia also alleges that Plaintiff is engaging in forum shopping and trying to "obtain a second bite at the apple" under factors ten and twelve. [*Id.* at 25.] Finally, Independencia argues that the first factor should

not weigh heavily in the Court's decision, as the final decree does not deprive the Court of jurisdiction and a majority of factors weigh against remand. [*Id.*] Reorganized Debtors, in support of Independencia's opposition, reinforce that the Court should hear and decide the State Law Action because it requires interpretation of bankruptcy laws and the Court's own orders. [Statement in Support of Opposition to Remand 2.]

In reply, Plaintiff first notes that Independencia does not dispute that the first factor favors abstention. [Remand Reply 12–13.] Plaintiff argues that the first factor is one of the most important in the abstention analysis, and that the first factor weighs heavily in favor of abstention. [*Id.*] Plaintiff also contends that Independencia is incorrect in identifying factors two, three, six and seven as weighing against abstention. [*Id.* at 13.] Citing *In re Casual Male*, Plaintiff asserts that that the state law issues predominate in this case, despite the fact that the Claims provide Plaintiff with rights to vote on the Plan. [*Id.* at 13–14.] Regarding the fifth factor, Plaintiff reiterates that the Court's inherent jurisdiction is not separate from its statutory jurisdiction. [*Id.* at 14–15.] Plaintiff further states that the matter can be timely adjudicated in state court. [*Id.* at 15.] Lastly, Plaintiff states that Independencia, rather than Plaintiff, has engaged in legal maneuvering under factors ten and twelve. [*Id.*]

Here, a majority of the factors, including the three weightiest factors, weigh in favor of abstention. For the first factor, the effect of remand on administration of the estate is minimal as Debtors' case is closed and most distributions have been made. *See In re Dana Corp., Inc.*, 2011 WL 6259640, at *4 (Bankr. S.D.N.Y. Dec. 15, 2011); [Hr'g Tr., Bankr. Docket No. 2966, 6–7; Final Decree.] Whether the Plaintiff succeeds or fails in the State Law Action is irrelevant to implementation of the Plan. *See See In re Ener1, Inc.*, 558 B.R. at 98. No administrative advantage exists to litigating the State Law Action in this Court. *See In re Casual Male Corp.*, 317 B.R. at 478.

Second, the issues raised by the State Law Actions relate to New York state law, and these issues predominate over the bankruptcy-related issues raised in Reorganized Debtors' Motion to Enforce and Defendants' motions to dismiss (which this Court has decided, *see supra* Section A). *See In re Solutia*, 2023 WL 5423962, at *10. These state law issues, which stem out of transactions and contracts between non-debtors, are better determined by a state court of law. *See id.*

Third, the applicable state law is largely settled. The federal and state court are equally competent to decide issues of tort and contract law. *See In re Casual Male Corp.*, 317 B.R. at 480. However, these issues are ultimately matters of New York state law and, therefore, appropriately decided by New York state courts. *See In re Solutia*, 2023 WL 5423962, at *21 (citing *In re Dana Corp.*, 2011 WL 6259640, at *4–*5).

The fourth factor does not carry significant weight in this analysis, as no related proceeding exists in a state or nonbankruptcy forum. No party points to this factor as supporting or weighing against abstention.

For the fifth factor, Independencia contends that the Court has inherent authority to interpret and enforce its own orders independent of 11 U.S.C. § 1334. [Remand Opposition 24.] Since the Court has already ruled on the applicability of the Exculpatory Clause (*see supra*, Section A), the State Law Action no longer requires interpretation of the Court's orders. Furthermore, Independencia does not assert federal question or diversity jurisdiction. Therefore, the sole basis for jurisdiction is statutory.

Sixth, the State Law Action is sufficiently remote from the main bankruptcy proceeding to weigh in favor of abstention. All parties to the State Law Action are non-debtors, and the claims asserted in the State Law Action are exclusively those of state law. *See In re George Washington Bridge Bus Station Dev. Venture LLC*, 2022 WL 1714176, at *10–*11. In fact, the transactions

upon which the State Law Action is based occurred outside the Debtors' bankruptcy process. [Complaint ¶ 169.]

Independencia and Reorganized Debtors attempt to demonstrate relatedness to the main bankruptcy case by (i) emphasizing the need to interpret and enforce the Confirmation Order, Plan and CBA Order and (ii) asserting that Independencia may call upon Reorganized Debtors for indemnification. [Remand Opposition 21 n.9, 24; Remand Opposition Support 2.] The Court, *supra*, has found that the Exculpatory Clause relied on by Reorganized Debtors and Independencia does not bar the State Law Action. Moreover, state courts can interpret the Plan, which operates as a binding contract, under state contract law. *See In re Dynegy Inc.*, 486 B.R. at 590; *In re George Washington Bridge Bus Station Dev. Venture LLC*, 2022 WL 1714176, at *10. Any claims of potential indemnification are speculative at this point, and the burden of indemnification would fall upon the Reorganized Debtors, as employer of Independencia, rather than the Debtors' estate. *See In re Dana Corp., Inc.*, 2011 WL 6259640, at *5; [Remand Opposition 21 n.9.]

Seventh, the State Law Action is substantively a matter of state law rather than Plan interpretation. While the State Law Action concerns "procedurally core" matters that "arise in" title 11, it is not "substantively core" and the state law issues still predominate over bankruptcy-related issues. *See In re Casual Male Corp.*, 317 B.R. at 478–79. The dispute is a core matter solely because the controversy happens to involve the Court's "arising in" jurisdiction. *See id.* Therefore, the seventh factor weighs in favor of abstention.

The eighth factor does not significantly factor into the Court's evaluation. To the extent a state court must interpret the Court's orders, the Plan and the Debtors' settlement with Plaintiff can be interpreted under state contract law. As the main bankruptcy case is closed and Defendants are all non-debtors, any judgments in state court against Defendants would not need to be enforced

by this Court. *See In re George Washington Bridge Bus Station Dev. Venture LLC*, 2022 WL 1714176, at *10.

Ninth, the burden placed upon the Court also supports permissive abstention. *See In re 610 W. 142 Owners Corp.*, 1999 WL 294995, at *3 (S.D.N.Y. May 11, 1999). While the Court acknowledges that New York state courts are extremely busy, bankruptcy filings continue to rise, with August 2023 commercial chapter 11 filings increasing fifty-four percent and total filings increasing eighteen percent over the past year. *August Commercial Chapter 11 Filings Increase 54 Percent Over Last Year*, American Bankruptcy Institute (Sept. 5, 2023), https://www.abi.org/newsroom/press-releases/august-commercial-chapter-11-filings-increase-54-percent-over-last-year. Moreover, the state court can decide the State Law Action in an efficient manner. Finally, a remand of the State Law Action to state court will not prolong the administration of Debtors' main bankruptcy case, as a final decree has been entered and the main bankruptcy case has been closed. [Final Decree, Bankr. Docket No. 2962.]

The tenth factor does not weigh strongly in either direction, as neither party appears to be forum shopping impermissibly.

As to the eleventh factor, no party asserts whether they have requested jury trial. Therefore, the Court determines that this factor is neutral.

The twelfth factor also favors remand. The State Law Action involves disputes between non-debtors, whose presence in the case outweighs the presence of Reorganized Debtors. *See In re Solutia*, 2023 WL 5423962, at *21. Reorganized Debtors allege that their participation is solely based upon its possible indemnification of Independencia and the effect of the State Law Action on "post-petition property of the estates." [Motion to Enforce ¶ 28, Remand Opposition 21 n.9.] Whether Independencia would be able to successfully call upon Reorganized Debtors for indemnification in the context of the sale of the Claims can be determined by the state court.

Plaintff alleges that, even if Reorganized Debtors were successfully called upon to indemnify Independencia, this obligation would likely fall upon the Reorganized Debtor, as an employer, rather than Debtors' estate, as the only identified source of indemnification is the "employer-union relationship." [Remand Reply 2–4] The state court will be able to resolve these issues if needed.

In sum, eight factors weigh in favor of abstention and four are neutral or weigh slightly against abstention. Considering these factors in total, the Court exercises its discretion and remands this case to state court.

## **CONCLUSION**

For the reasons stated above, Reorganized Debtors' Motion to Enforce and Defendants' Motions to Dismiss, solely to the extent they raise exculpation under the Plan as a defense, are denied, and Plaintiff's Remand Motion is granted. The State Law Action, including the remainder of the Independencia Motion to Dismiss, Athena Motion to Dismiss, and Monomoy Motion to Dismiss, are remanded to state court.

**IT IS SO ORDERED.**

Dated: New York, New York                              /s/John P. Mastando III
       September 22, 2023                               Honorable John P. Mastando III
                                                        United States Bankruptcy Judge